James A. GUTH, Petitioner,

and

Arlys M. Guth, Appellee,

v.

COMMISSIONER OF INTERNAL
REVENUE, Appellant.

No. 88–7034.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 6, 1989.

Decided March 1, 1990.

Teresa E. McLaughlin, Dept. of Justice, Washington, D.C., for appellant.

Peter R. Stromer, Los Gatos, Cal., for appellee.

Before WALLACE, PREGERSON and ALARCON, Circuit Judges.

PREGERSON, Circuit Judge:

The government challenges the Tax Court's determination that Arlys Guth was entitled to relief from tax liability under the tax code's "innocent spouse" provision, 26 U.S.C. § 6013(e) (1989). We affirm the Tax Court's decision.

## FACTS

Arlys Guth has only limited knowledge of financial matters. Arlys married James Guth in 1977. They were separated in 1982, and divorced in 1983. During the six years of their marriage, James Guth handled all the family's finances. He controlled the joint checking account, paid all the bills, handled the credit cards, and prepared their joint income tax returns for the years at issue. Arlys never participated in the preparation of the returns or questioned their content; she signed the joint return because James told her to do so. James did not permit Arlys access to their money, did not give her an allowance, and required her to ask his permission before she made any purchase. Arlys only signed one check on their personal joint checking account during her entire marriage to James, and this occurred following their separation.

Shortly after his marriage to Arlys, James became active in the Universal Life Church, forming his own congregation (the Carlmont ULC) and naming himself pastor.[1] James formed the congregation for perceived tax advantages, yet he was careful not to discuss this motive with Arlys. He told her only that he formed the church to practice his religion as he saw fit.

Though James named Arlys treasurer of the congregational bank account, her involvement with church activities was minimal. Her sole function as treasurer was to sign documents and checks which her husband prepared and told her to sign. She complied with his orders apparently without question. James engineered transactions between the couple's personal account and that of the church for which he claimed charitable contribution deductions on their joint tax returns for the years 1979 through 1981. He alone prepared and signed all checks to the Carlmont ULC from the couple's joint checking account. He then prepared checks from the Carlmont ULC bank account, payable to himself, and told Arlys to sign them without explaining their purpose to her. Arlys testified at trial that

> [James] would write out checks, and since I was treasurer, the only ones who could sign on that checking account was him and myself. And he said it wouldn't be legal for him to sign a check himself, it was the treasurer's job. He would make out the checks, and say "sign them."

Although Arlys knew that there were checks to and from the Carlmont ULC account, she believed the transactions were made in furtherance of her husband's religious activities.

In 1987, the Commissioner of Internal Revenue determined deficiencies in and additions to the Guths' federal income tax for the years 1979 to 1981 due to the erroneous deductions claimed for the charitable contributions to the Carlmont ULC. The Guths conceded the deficiency determinations and the additions. Only the issue of Arlys Guth's liability for these deficiencies and additions remains.

## "INNOCENT SPOUSE" RELIEF

As a general rule, marital partners are jointly and severally liable for income tax owed when they sign a joint return. 26 U.S.C.A. § 6013(d)(3) (1989). Prior to 1971, a spouse was held strictly liable for tax deficiencies resulting from omissions and deductions attributable solely to the other

---

1. Contributions to the Universal Life Church, Inc. are tax deductible (see Smith v. CIR, 800 F.2d 930, 934 (9th Cir.1986); Rager v. CIR, 775 F.2d 1081, 1082 (9th Cir.1985); Universal Life Church, Inc. v. United States, 372 F.Supp. 770, 776 (E.D.Cal.1974)).

spouse, even if the "innocent spouse" knew nothing of the erroneous items. In response to the inequity of a "rule of strict liability for income taxes [imposed] on the many married women who are unknowingly subjected to its provisions by filing joint returns," *Louise M. Scudder*, 48 T.C. 36, 41 (1967) (finding the innocent spouse liable for taxes under the joint return, but deploring the law which required that result), Congress passed legislation "to bring government tax collection practices into accord with basic principles of equity and fairness." S.Rep. No. 1537, 91st Cong., 2d Sess., *reprinted in* 1970 U.S.Code Cong. & Admin.News 6089, 6091.

The 1971 legislation only applied to omissions in gross income. *See Allen v. Commissioner*, 514 F.2d 908, 915 (5th Cir.1975). In 1984, Congress revisited the innocent spouse provision out of a concern that the earlier legislation "was not sufficiently broad to encompass many cases where the innocent spouse deserve[d] relief." H.R. Rep. No. 432, 98th Cong., 2d Sess. at 1502, *reprinted in* 1984 U.S.Code Cong. & Admin.News 697, 1143. In line with this concern, Congress extended section 6013(e) protection to "substantial understatement[s] of tax ... attributable to grossly erroneous items ... including claims for deductions or credits, as well as omitted income." *Id.*

■ The requirement that relief be granted "only where it would be inequitable to hold the innocent spouse liable" lies at the heart of the section's history, *id.*, and the statute specifically requires this inequity as precedent to relief (26 U.S.C. § 6013(e)(1)(D)). In addition to this equitable determination (based on a consideration of the totality of the circumstances), the taxpayer seeking to avoid joint liability must establish several particular factual points. The taxpayer must show that the couple filed a joint return, that the return contained a substantial tax understatement attributable to the other spouse's errors, and that in signing the return, the "innocent spouse" did not know or have reason to know of the substantial understatement.

*Price v. Commissioner*, 887 F.2d 959, 961–62 (9th Cir.1989).

In the present case, the parties dispute the nature of the test which should be applied to establish lack of knowledge of an understatement of income tax and the standard under which we should review a Tax Court's determination of section 6013(e) relief.

STANDARD OF REVIEW

While section 6013(e) is anomolous as a tax code provision with its frank focus on the equities of tax liability, determination of relief under the section is nonetheless squarely based on the Tax Court's consideration of the facts of an individual taxpayer's case. As we discuss below, facts are central to a Tax Court's determination of whether an innocent spouse had actual or constructive knowledge of an understatement. Fact-findings also dominate the court's equity determination under a totality of the circumstances test.

We review Tax Court decisions "in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury." 26 U.S.C. § 7482(a)(1) (1989). The Federal Rules mandate use of a clearly erroneous standard in review of district court fact-finding. Fed.R.Civ.P. 52(a). In light of the domination of factual considerations in section 6013(e) determinations, it is hard to see how a Tax Court's rule in this context can be, as the government argues, "fully reviewable" by this court. We will review a Tax Court's determination of relief under section 6013(e) for clear error. *See Stone v. Commissioner*, 275 U.S.App.D.C. 123, 865 F.2d 342, 344 (1989) ("Our review of the Tax Court undoubtedly proceeds under the clearly erroneous standard."); *see also Stevens v. Commissioner*, 872 F.2d 1499, 1505 (11th Cir.1989); *Roberts v. Commissioner*, 860 F.2d 1235, 1239 (5th Cir.1988).

THE TEST TO ESTABLISH LACK OF KNOWLEDGE

■ "A spouse has 'reason to know' of the substantial understatement if a reasonably prudent taxpayer in her position at the

time she signed the return could be expected to know that the return contained the substantial understatement." *Price*, 887 F.2d at 965 (*citing Stevens*, 872 F.2d at 1505) (*citing Sanders v. U.S.*, 509 F.2d 162, 167 (5th Cir.1975)). The test for constructive knowledge of an understatement is ultimately a subjective one, looking to such factors as a spouse's level of education, involvement in family financial affairs, the evasiveness or deceit of the culpable spouse, and any unusual or lavish expenditures inconsistent with the family's ordinary standard of living. *Price*, 887 F.2d at 965. *See also Lubrano v. Commissioner*, 47 T.C.M. 855 (1984) (noting the subjective nature of innocent spouse determinations); *In re Barry*, 48 B.R. 600, 607 (M.D.Tenn. Bkrtcy.1985).

Prior to the 1984 amendments, which extended innocent spouse relief from understatements attributable to omissions in income to include those involving deduction errors, courts administered the "reason to know" test strictly. Courts required that a spouse establish she had no knowledge of the transactions leading to the understatement, not simply that she had no knowledge of the understatement itself. Even if a spouse could show that she had no knowledge of the tax consequences of a transaction, if she was aware that the underlying transaction had occurred, courts held her responsible for constructive knowledge of the understatement, and would not grant innocent spouse relief. *See, e.g., Quinn v. Commissioner*, 524 F.2d 617, 626 (7th Cir. 1975).

■ Though the pre–1984 knowledge test remains appropriate when applied to income omission cases, *see, e.g., Purcell v. Commissioner*, 826 F.2d 470 (6th Cir.1987), this court has determined that

> literal superimposition of the legal standard developed in omission cases onto deduction cases ... would for the most part wipe out innocent spouse protection in the latter category.... [B]ecause deductions are necessarily recorded, any spouse who at least reads the joint return will be put on notice that *some*

transaction allegedly has occurred to give rise to the deduction.

> *Price*, at 963 n. 9.

The "reason to know" test in deduction cases is thus given a broader reading than in omission cases. While a spouse's knowledge of the transaction underlying the erroneous deduction remains relevant, standing by itself such knowledge does not preclude relief. *Id.*

■ The government relies on the test as developed in the context of omission cases to argue that Arlys Guth's actual knowledge of the transactions leading to the understatements, i.e., the checks going in and out of the personal and church accounts, is enough to support constructive knowledge of the understatements themselves and to preclude a grant of section 6013(e) relief from tax liability. Given that the Guth understatements occurred because of erroneous deductions, this is an unduly restrictive application of the "reason to know" test. As stated in *Price*, knowledge of the transaction does not in itself bar innocent spouse protection in the context of erroneous deductions. We must balance the particular subjective factors of this case to determine whether the Tax Court erred in granting section 6013(e) protection.

The Tax Court made factual findings that Arlys Guth had limited knowledge of financial matters, and was only tangentially involved in family finances. The court noted that her husband James had hidden from Arlys his true motivation for founding a church. He deliberately led her to believe that he operated out of religious belief. Noting Arlys's limited education and sense of duty to her husband, the Tax Court felt Arlys was justified in not doubting her husband in this regard. There was no evidence of lavish or unusual expenditures that would have given her reason to know that something was financially amiss.

### THE DUTY TO INQUIRE

■ "Even if a spouse is not aware of sufficient facts to give her *reason to know* of the substantial understatement, she

nevertheless may know enough facts to put her *on notice* that such an understatement exists." *Price*, 887 F.2d at 965. The test for determining whether the spouse was on notice of the understatement is the same subjective test used to determine whether she had reason to know of the understatement: would a reasonably prudent taxpayer *in her position* be led to question the legitimacy of the deduction. *Id.* If the spouse is aware of sufficient facts to put her on notice of an understatement, "a duty of inquiry arises, which, if not satisfied by the spouse, may result in constructive knowledge of the understatement being imputed to her." *Id.*

 Tax court determination of whether a spouse had knowledge of sufficient facts to trigger a duty of inquiry is, like the determination of whether she had reason to know, highly dependent on facts presented at the hearing. The *Price* court determined that the spouse had a duty to inquire "in light of the fact that [she] knew of the existence of the ... investment [leading to the deduction] and its rather unusual nature." *Id.* at 966. In this case, though Arlys was aware of the bare existence of the transactions leading to the deductions, she was apparently not aware of anything unusual about them. It is this subjective awareness on the part of the taxpayer of something odd or unusual about the circumstances leading to the understatement that triggers the duty to inquire. The tax court, in the unique position of being able to assess this awareness, did not clearly err in its determination that, given the facts of her situation, no such duty arose for Arlys Guth.

## CONCLUSION

A reasonably prudent person in Arlys Guth's position could not be expected to know that the Guth return contained substantial understatements of tax. Nor would a reasonably prudent person in her position have been put on notice of the understatement given her subjective awareness of the facts of the transactions underlying the deductions. Thus, the Tax Court did not clearly err when it granted Arlys Guth relief from joint tax liability on the 1979 through 1981 returns under the provisions of section 6013(e).

The decision of the Tax Court is AFFIRMED.