ROBERT LAX AND WENDY LAX, Petitioners [1] v. COMMISSIONER OF INTERNAL REVENUE, Respondent Lax v. Commissioner
Docket Nos. 29437-85, 24176-88, 27879-92
United States Tax Court
T.C. Memo 1994-329; 1994 Tax Ct. Memo LEXIS 337; 68 T.C.M. (CCH) 115; T.C.M. (RIA) 94329; July 19, 1994, Filed *337 Decisions will be entered under Rule 155. For petitioners: Thomas J. O'Rourke For respondent: Lawrence L. Davidow
DAWSON
DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: These cases were assigned to Chief Special Trial Judge Peter J. Panuthos pursuant to the provisions of section 7443A(b)(4) and Rules 180, 181, and 183. [2] The Court agrees with and adopts the opinion of the Chief Special Trial Judge, which is set forth below. OPINION OF THE CHIEF SPECIAL TRIAL JUDGE PANUTHOS, Chief Special Trial Judge: Respondent determined deficiencies in and additions to petitioners' Federal income taxes as follows: Docket No. 29437-85
Addition to Tax Year
Deficiency
Sec. 6659
1979
$ 49,509
--
1980
26,775
--
1981
56,281
$ 2,045
Docket No. 24176-88
Additions to Tax
Year
Deficiency
Sec. 6659
Sec. 6661
1982
$ 42,954
$ 12,886
$ 10,739
Docket No. 27879-92
Additions to Tax Year
Deficiency
Sec. 6653(a)(1)
Sec. 6653(a)(2)
Sec. 6661 1985
[1]
$ 347
[2]
$ 1,733
*338 Respondent also determined that interest on the deficiencies for the taxable years 1979 through 1982 shall be calculated pursuant to the increased interest rate imposed pursuant to section 6621(c). Respondent filed an amended answer in docket Nos. 29437-85 and 24176-88, asserting additions to tax for negligence on the underpayment of tax for the years 1981 and 1982 pursuant to section 6653(a)(1) and (2). Respondent also conceded the section 6659 addition to tax for the tax years 1981 and 1982, as pertains to petitioner's investment in the Mid Continental Drilling Associates II (MCDA II). Petitioners filed an amended petition in docket Nos. 29437-85 and 24176-88 asserting that petitioner Wendy Lax is an innocent spouse within the meaning of section 6013(e) with respect to the deficiencies in and additions to tax that are related to the investment in MCDA II. [3]
The parties filed a stipulation of settled issues *339 in docket No. 29437-85 which resolved most of the remaining issues raised in the notice of deficiency, except for those issues pertaining to petitioners' investment in Plymouth Equipment Associates and MCDA II. [4] In a stipulation of facts, petitioners concede in docket Nos. 29437-85 and 24176-88 that they are not entitled to deductions, losses, or credits claimed for their investment in MCDA II and that they are liable for additional interest imposed pursuant to section 6621(c) as pertains to their investment in MCDA II. The remaining issues in dispute *340 are: (1) Whether petitioners are liable for the additions to tax for negligence for the taxable years 1981, 1982, and 1985; (2) whether respondent abused her discretion by failing to waive the section 6661(a) substantial understatement addition to tax for the years 1982 and 1985; and (3) whether petitioner Wendy Lax qualifies for relief from tax liability for all the years in issue as an "innocent spouse" under section 6013(e). FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by reference. At the time the petition was filed, petitioners resided in Englewood, New Jersey. Petitioners Robert Lax and Wendy Lax are husband and wife and have been married since 1958. Petitioner Robert Lax (hereinafter petitioner) has a high school education and has spent his entire working career in the textile business. For the past 30 years petitioner has been self-employed in the textile converting business. From 1962 through 1990 or 1991, petitioner was an officer and shareholder of Executive Fabrics Corp. (hereinafter Fabrics), a corporation engaged in the textile converting business. *341 From 1962 through 1983, petitioner was a 50-percent shareholder and treasurer of Fabrics. In 1983, petitioner purchased the remaining shares of stock and became the 100-percent owner and president of Fabrics. During his tenure at Fabrics, petitioner made many of the financial decisions involving the company. Petitioner Wendy Lax was employed as a shopper for Fabrics during the 1980's, receiving an annual salary of approximately $ 18,000. From the mid 1970's through approximately 1989, Fabrics used the accounting firm of Rashba & Pokart (hereinafter RP) to prepare its corporate tax returns and its financial statements. RP also prepared petitioners' individual Federal income tax returns for all the years in issue. During this period, Robert Feinman (Feinman), a partner at RP, was in charge of the Fabrics account and supervised the preparation of petitioners' personal income tax returns. From 1976 through 1985, petitioner invested in at least eleven limited partnerships. The partnerships purportedly engaged in activities such as real estate, coal, plastics recycling, energy conservation, and horse racing. Feinman introduced petitioner to several of the investments, including *342 all of the coal partnerships. Feinman received a sales commission from petitioner's investment in the coal partnerships. Petitioner was aware of the receipt of the commission at the time of his investment in MCDA II. Petitioner did not possess any knowledge and/or experience in the activities purportedly engaged in by any of these partnerships. Petitioner was also aware that Feinman did not possess any expertise in the partnership activities. Petitioners' portion of the combined income and loss generated by these partnerships, as reported on their Federal income tax returns for those years, was $ 200,599 (income) and $ 910,285 (loss). The income is attributable to a real estate partnership which was not one of the partnerships that Feinman recommended to petitioner. Petitioners claimed losses from all of the partnerships recommended by Feinman. Several of these partnerships reflected a loss prior to petitioner's investment in MCDA II. One of the partnerships referred to above was MCDA II. MCDA II purportedly engaged in the oil and gas industry by utilizing a technology in drilling which involved a new piece of equipment referred to as the Terra-Drill. Feinman, through the *343 assistance of another RP employee, Stephen Burr (Burr), introduced petitioner to the investment in MCDA II. Burr, a junior level employee, was responsible for representing clients of RP whose returns were being examined by the IRS. Prior to petitioner's investment in MCDA II, Burr and petitioner were investors in a horse racing partnership. In the presence of Feinman, Burr discussed the investment opportunities in MCDA II with petitioner. Burr presented to petitioner an offering memorandum and prospectus provided by MCDA II. According to the offering material, petitioner's investment would entitle him to claim a tax deduction equal to four times the amount of cash invested for the next several years. In December 1981, petitioner purchased two units in MCDA II, paying $ 20,000 in cash and agreeing to sign promissory notes in the amount of $ 240,000, payable in the year 1994. At the time of the investment, petitioner regarded Feinman as his chief financial adviser, believing it was Feinman's obligation to reduce petitioner's tax liabilities. Burr was considered a dealer and received a commission as a result of petitioner's investment. Petitioner was aware that a commission *344 might have arisen from such an investment. At the time of his investment in MCDA II, petitioner was aware that Feinman had no knowledge or experience in the field of gas and oil drilling. Neither Feinman nor Burr performed any additional research concerning the investment in MCDA II, relying almost exclusively on the offering material. Petitioner possessed no specialized knowledge or degrees in the field of oil and gas drilling. Petitioner also had no practical experience in this field. Petitioner did not consult with any experts in the field of oil and gas drilling to evaluate the anticipated profitability in the MCDA II venture, or perform any other type of independent verification of MCDA II's assertions. Petitioner did not personally inspect the machinery or exploratory drilling sites which were purportedly to be used in the venture, and petitioner did not inspect any of the financial statements, ledgers, or partnership tax returns associated with MCDA II. Petitioner did not seek additional advice, besides that offered by Feinman and Burr, concerning the deductibility of the losses which he claimed arose from the investment in MCDA II. Petitioner also did not ask Feinman *345 or Burr to explain the tax principles by which any tax benefits in MCDA II were generated. After the initial investment, petitioner received reports from MCDA II which he did not read. Many of these reports were subsequently delivered to Feinman. In addition to the investment in the limited partnerships, petitioner also invested in stock through an account established with the Thomas McKinnon Agency. Petitioner did not seek the advice of Feinman or anyone at RP regarding transactions undertaken in his stock account with the agency. Petitioner Wendy Lax also invested in two subchapter S corporations, for which petitioners reported income and claimed deductions on their 1982 through 1985 returns. [5]
Petitioners have been living together as married persons since 1958. Petitioners filed joint Federal income tax returns for the years in issue. Petitioners maintained joint checking accounts throughout the 1980's. Both petitioners had access to the checking accounts. *346 Petitioners shared responsibility for managing their personal finances. In a test case involving several similar partnership investments in the drilling venture (including MCDA II), this Court held that MCDA II was a tax shelter, the activities of which were not engaged in with a profit objective within the meaning of section 183, and that the deductions, losses, and credits claimed with respect to the partnerships were attributable to tax-motivated transactions within the meaning of section 6621(c). Webb v. Commissioner, T.C. Memo. 1990-556, remanded on another issue without published opinion 17 F.3d 398 (9th Cir. 1994). Petitioners do not appear to dispute this Court's holding in Webb v. Commissioner, supra.[6]
*347 On their 1981 Federal income tax return, petitioners claimed partnership losses associated with MCDA II and two other partnerships (Econ-Energy Associates and Plymouth Equipment Associates) in the amounts of $ 79,200, $ 6,956, and $ 20,317, respectively. On their 1982 and 1985 Federal income tax returns, petitioners claimed partnership losses associated with MCDA II in the amounts of $ 85,934 and $ 16,871, respectively. All of the claimed deductions associated with MCDA II were disallowed. In the late 1980's, petitioner sought relief from RP for improprieties involving other partnerships he invested in. RP agreed to reimburse petitioner for a portion of the expenses he incurred. Petitioner sought similar relief with respect to his investment in MCDA II. RP declined to make similar reparations, and petitioner brought a malpractice suit against RP in New York State court. As of the date of trial in the instant cases, the New York State court case was still pending. OPINION Respondent maintains that petitioners were negligent in making their investment in MCDA II and claiming corresponding losses. Petitioners claim that they were not negligent because they relied upon the *348 advice of their accountant, Feinman. Furthermore, petitioners argue that petitioner Wendy Lax should not be held liable for any of the deficiencies or additions to tax associated with the investment in MCDA II because she qualifies as an innocent spouse under the provisions of section 6013(e). Additions to Tax
1. Section 6653
Section 6653(a)(1) provides that if any part of any underpayment of tax is due to negligence or intentional disregard of rules or regulations, there shall be added to the tax an amount equal to 5 percent of the underpayment. Section 6653(a)(2) provides for an addition to tax in the amount of 50 percent of the interest payable on the portion of the underpayment of tax attributable to negligence. Negligence is defined as the lack of due care or the failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Respondent bears the burden of proof as to the additions to tax for negligence for the years 1981 and 1982 because she claimed said additions to tax for the first time in her amended answer. Rule 142(a); Achiro v. Commissioner, 77 T.C. 881, 890-891 (1981). *349 Petitioners bear the burden of proof with respect to the year 1985. Rule 142(a); Bixby v. Commissioner, 58 T.C. 757, 791 (1972). Petitioners argue that they are not liable for the additions to tax for negligence because they relied upon the advice of their accountant (Feinman) when deciding to invest in MCDA II and, therefore, exercised reasonable care. Under certain circumstances, reliance by a taxpayer on the advice of a competent adviser can be a defense to the additions to tax for negligence. See, e.g., United States v. Boyle, 469 U.S. 241, 250-251 (1985); Ewing v. Commissioner, 91 T.C. 396, 423-424 (1988), affd. without published opinion 940 F.2d 1534 (9th Cir. 1991). However, reliance on professional advice, standing alone, is not an absolute defense to negligence, but rather a factor to be considered. Freytag v. Commissioner, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S. 868 (1991). It must be established that the reliance was reasonable, *350 in good faith, and based upon full disclosure. Ewing v. Commissioner, supra; Pritchett v. Commissioner, 63 T.C. 149, 174-175 (1974). Petitioner and Feinman had a business relationship of over 20 years. Feinman was responsible for the preparation of petitioner's business as well as personal income tax returns. Petitioner claims that Feinman was his chief financial adviser; however, petitioner did not seek to obtain Feinman's advice prior to making all of his financial decisions. In fact, petitioner never sought Feinman's advice, or the advice of anyone at RP, with regard to his investments in stock. Feinman introduced petitioner to investments in several limited partnerships prior to his investment in MCDA II. However, Feinman possessed no experience or knowledge in the activities of those partnerships. Petitioner was aware of Feinman's lack of knowledge and experience; yet petitioner proceeded to invest in the partnerships, receiving no income and claiming a deduction for extensive losses from the investments. Despite this, petitioner proceeded to invest in MCDA II, claiming he relied upon Feinman's advice. *351 Feinman did not possess any expertise in the area of oil and gas drilling, a fact which petitioner was again aware of at the time of his investment in MCDA II. Feinman also did not seek the assistance of an independent adviser or expert in this area to assess the chances of success of such an investment. We have rejected claims of reliance when neither the taxpayer nor the "expert" relied upon by the taxpayer knew anything about the business involved. Freytag v. Commissioner, supra; Beck v. Commissioner, 85 T.C. 557 (1985); Flowers v. Commissioner, 80 T.C. 914 (1983). This is not a situation such as that found in Heasley v. Commissioner, 902 F.2d 380, 385 (5th Cir. 1990), revg. T.C. Memo. 1988-408, where the Court of Appeals held that taxpayers, who were unsophisticated investors with limited prior investment experience, were not liable for the negligence-related additions to tax. The facts in the present case are distinguishable. While petitioner did not possess an advanced education, he had extensive experience in both *352 operating a business and investing. In fact, petitioner had extensive investment experience with Feinman, which failed to generate any income for petitioner. Based upon the record, we find that petitioner's reliance on Feinman's advice was unreasonable, and we conclude that such reliance is not sufficient to shield petitioners from liability for the additions to tax for negligence. Petitioner appears to argue that he was somehow misled into investing in MCDA II because he was unaware that Burr received a commission from petitioner's investment. However, petitioner testified that he was aware that commissions often were awarded in such instances. In fact, petitioner knew that Feinman had received a commission with respect to an earlier partnership investment. Despite this, petitioner failed to ask Burr whether he was to receive a commission from the investment. We conclude that petitioner was not misled by Burr in regard to whether the latter would receive a commission. Petitioner, possessing no expertise in this area, also failed to perform the most elementary steps to investigate the investment and failed to monitor the progress of the activities of MCDA II. We believe that *353 a reasonably prudent person would have stepped back and assessed the MCDA II investment, especially in light of the disparity between the cash invested and the corresponding tax deductions being offered, and the rate of "success" petitioner experienced in other investments recommended by Feinman. See Saviano v. Commissioner, 765 F.2d 643, 654 (7th Cir. 1985), affg. 80 T.C. 955 (1983); LaVerne v. Commissioner, 94 T.C. 637, 652-653 (1990), affd. without published opinion sub nom. Cowles v. Commissioner, 949 F.2d 401 (10th Cir. 1991), affd. without published opinion 956 F.2d 274 (9th Cir. 1992). We conclude that petitioner failed to adequately investigate MCDA II's operations or its potential for profit prior to investing and claiming deductions on the tax returns, and find that petitioners were negligent in claiming a deduction for their distributive share of losses incurred by MCDA II. Accordingly, we hold that petitioners are liable for the additions to tax for negligence for the years 1981, 1982 and 1985. See David v. Commissioner, T.C. Memo. 1993-621; *354 Goldman v. Commissioner, T.C. Memo. 1993-480; Steerman v. Commissioner, T.C. Memo. 1993-447; Estate of Raney v. Commissioner, T.C. Memo. 1992-684. 2. Section 6661
Section 6661(a) provides for an addition to tax in the amount of 25 percent of any underpayment attributable to a substantial understatement of tax. Sec. 6661(a); Pallottini v. Commissioner, 90 T.C. 498 (1988). An understatement is substantial if it exceeds the greater of 10 percent of the correct tax or $ 5,000. Sec. 6661(b)(1)(A). In general, if a taxpayer had substantial authority for his tax treatment of the item in question, or if the taxpayer adequately disclosed the tax treatment of the item on his return, then the taxpayer may escape liability for the addition to tax with respect to that liability. Sec. 6661(b)(2)(B). However, if the item in question is attributable to a tax shelter, the disclosure exception will not apply, and the substantial authority exception will apply only if there was substantial authority for the treatment of the item on the return and the taxpayer reasonably *355 believed that his treatment of the item was more likely than not the proper treatment. Sec. 6661(b)(2)(C)(i); sec. 1.6661-5, Income Tax Regs. Petitioners bear the burden of proving that respondent's determinations are erroneous. Rule 142(a); Condor Intl., Inc. v. Commissioner, 98 T.C. 203, 226 (1992). It is clear from the record that a substantial understatement exists. Petitioners do not appear to dispute that a substantial understatement exists or claim that there was substantial authority for the treatment of the partnership items on their returns. Rather, petitioners argue that respondent abused her discretion by failing to waive the addition to tax for a substantial understatement of tax liability. [7]
Section 6661(c) provides that the Secretary may waive all or *356 part of the addition to tax under section 6661 on a showing by the taxpayer that there was reasonable cause for the understatement and that the taxpayer acted in good faith. The authority to waive the section 6661(a) addition therefore rests with the Commissioner, not with this Court. Sec. 6661(c); sec. 1.6661-6(a), Income Tax Regs. The denial of a waiver by the Commissioner is reviewable by this Court on an abuse of discretion basis. Mailman v. Commissioner, 91 T.C. 1079, 1083-1084 (1988). Petitioners claim that their reliance upon Feinman's preparation of their returns was reasonable and in good faith, citing sec. 1.6661-6(b), Income Tax Regs.Section 1.6661-6, Income Tax Regs., sets out the standards of reasonable cause and good faith. The regulation provides that the most important factor is "the extent of the taxpayer's effort to assess * * * [his] proper tax liability under the law". Sec. 1.6661-6(b), Income Tax Regs. The Commissioner may also consider the taxpayer's experience, knowledge, and understanding. Klieger v. Commissioner, T.C. Memo. 1992-734. Based upon the facts presented in this case, we find *357 that petitioners' reliance on Feinman was not reasonable and in good faith. Petitioner, while admittedly not knowledgeable in tax law, possessed enough business acumen to realize that he could not shift the blame for poor business decisions to others around him, and, therefore, was obligated to review the information contained on his returns. This is especially true in the instant case because many of petitioner's poor business decisions were made at the recommendation of the return preparer, Feinman. The facts indicate that petitioner left all the return preparation responsibilities to Feinman, and such reliance in the instant case was not reasonable. Accordingly, we find that respondent did not abuse her discretion in not waiving the imposition of the section 6661 addition, and hold that petitioners are liable for the section 6661 addition to tax for the years 1982 and 1985. Innocent Spouse
Petitioners filed joint Federal income tax returns for the years in issue. Section 6013(d)(3) provides that if joint returns are filed, liability with respect to the tax for the year of the return shall be joint and several. Petitioners argue that petitioner Wendy Lax should not *358 be liable for any of the deficiencies and additions to tax for the years 1981 and 1982 because she is an innocent spouse. [8]
Section 6013(e) provides in part: (e) Spouse Relieved of Liability in Certain Cases. -- (1) In general. -- Under regulations prescribed by the Secretary, if -- (A) a joint return has been made under this section for a taxable year, (B) on such return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse, (C) the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement, and (D) taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement.
then the other spouse shall be relieved of liability for tax *359 (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such substantial understatement.
If the substantial understatement of tax is due to a claim of deduction, credit, or basis, the spouse also must show that the understatement exceeds a specified percentage of that spouse's adjusted gross income for the most recent year ending before the date the deficiency notice was mailed. Sec. 6013(e)(4); Purcell v. Commissioner, 86 T.C. 228, 235 (1986), affd. 826 F.2d 470 (6th Cir. 1987). Petitioners bear the burden of proving that each of the requirements of section 6013(e) has been satisfied, and failure to prove any one of the controverted statutory requirements will prevent petitioner Wendy Lax from qualifying for relief. Stevens v. Commissioner, 872 F.2d 1499, 1504 (11th Cir. 1989), affg. T.C. Memo. 1988-63; Bokum v. Commissioner, 94 T.C. 126, 138 (1990), affd. 992 F.2d 1132 (11th Cir. 1993). The parties do not appear to dispute that the requirements *360 of section 6013(e)(1)(A) and (B) have been met. Rather, the parties' disagreement concerns whether petitioners have established that petitioner Wendy Lax neither knew nor had reason to know of the substantial understatements, and whether it would be inequitable to hold her liable for the resultant deficiencies and additions to tax. Whether a spouse had "reason to know" of a substantial understatement is a factual matter. In order to prevail, the spouse seeking relief generally must show that she possessed a lack of knowledge and reason to know of the transaction from which the substantial understatement stemmed, not simply a lack of knowledge about the tax consequences resulting from the transaction. Bokum v. Commissioner, supra.A factor to be considered is whether a reasonably prudent taxpayer, in the same position as the spouse at the time of the signing of the return, could be expected to know that the return contained a substantial understatement. Guth v. Commissioner, 897 F.2d 441, 443-444 (9th Cir. 1990), affg. T.C. Memo. 1987-522. The record reflects that petitioners shared *361 joint checking accounts to which each had equal access, and that petitioners also shared responsibility for personal financial matters. Petitioner Wendy Lax possessed investment experience, having invested in two subchapter S corporations herself. At trial, petitioner claimed that his wife had no knowledge of his investment in MCDA II. However, this contradicts what was stated in the petitions. According to the petitions, petitioner Wendy Lax "was aware that Mr. Lax had made investments in the partnership [MCDA II]". Petitioner Wendy Lax did not testify and has thus failed to show that she lacked knowledge of and reason to know of the investment in MCDA II. Because we find that she did not satisfy one of the statutory requirements of section 6013(e), we hold that petitioner Wendy Lax fails to qualify as an "innocent spouse" under the statute and, therefore, is jointly and severally liable. Based upon the foregoing and to reflect the concessions of the parties, Decisions will be entered under Rule 155. Footnotes
1. The above-captioned cases were consolidated for purposes of trial, briefing, and opinion pursuant to the Court's order dated Sept. 28, 1993.↩
2. All section references are to the Internal Revenue Code as amended unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
1. The statutory notice of deficiency for the taxable year 1985 s an "affected items" notice. The underlying deficiency and is an "affected items" notice. The underlying deficiency and liability for increased interest pursuant to sec. 6621(c) have been separately assessed as a result of the partnership-level proceedings.↩
2. 50 percent of the interest due on the deficiency.↩
3. In docket No. 27879-92, petitioners asserted the claim for innocent spouse status in the petition.↩
4. Issues relating to petitioners' investment in Plymouth Equipment Associates are part of a separate tax-shelter litigation project. In a stipulation of facts, petitioners concede that portion of the deficiency which is attributable to the disallowance of the deductions, losses, and credits associated with their investment in Plymouth Equipment Associates. Petitioners also concede the applicability of the sec. 6621(c) addition to tax attributable to said adjustments.↩
5. These deductions are not at issue in this case.↩
6. In their brief, petitioners state that the "issues involving the amount of deficiency were resolved at the Partnership level by this Court's decision in Webb v. Commissioner, T.C. Memo. 1990-556↩".
7. Respondent claimed in her trial memorandum, and later on brief, that petitioners were seeking to assert that substantial authority existed for their position. We do not find that petitioners raised this argument.↩
8. Petitioners concede that petitioner Wendy Lax is not an innocent spouse with respect to the tax year 1985.↩