T.C. Memo. 1996-223


UNITED STATES TAX COURT


CARLA J. ZIMMERMAN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 5586-94.                    Filed May 15, 1996.


<u>George Ortiz</u>, for petitioner.

<u>Judith C. Winkler</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


PARKER, <u>Judge</u>:  Respondent determined the following
deficiencies in tax, additions to tax, and penalty for petitioner
Carla J. Zimmerman and her husband, Charles R. Zimmerman:

|  |  | Additions to Tax | | | Penalty |
| Year | Deficiency | Sec. 6653(a) | Sec. 6661 | Sec. 6651(a)(1) | Sec. 6662(a) |
| 1988 | $13,977.82 | $698.89 | $3,494 | --- | --- |
| 1989 | 14,786.75 | --- | --- | $3,615.75 | $2,957.35 |

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable years before the Court, and all Rule references are to the Tax Court Rules of Practice and Procedure.

After concessions,[1] the issue for decision is whether petitioner qualifies for relief under section 6013(e) as an innocent spouse with respect to the tax liability stemming from her husband's Schedule C business income and expenses for the taxable years 1988 and 1989.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference.

Petitioner resided in Belleview, Florida, at the time she filed her petition. Petitioner and Charles R. Zimmerman (the Zimmermans) were married in June of 1985, have not separated or divorced, and continue to be married. The Zimmermans have a daughter, Brooke, born April 22, 1988.

Petitioner has a high school education and has no training in bookkeeping. Before her marriage, petitioner worked, received Forms W-2, knew she had to file tax returns, and filed income tax

---

[1] The parties agree and have stipulated that the adjustments for the taxable years 1988 and 1989 and the resulting deficiencies, as stated in the notice of deficiency, are accurate. Petitioner does not claim innocent spouse treatment as to her own omitted wage, interest, and dividend income for the years 1988 and 1989. Petitioner does not contest any of the additions to tax or penalty for the years 1988 and 1989.

returns, using a tax return preparer to complete the returns. In 1984, petitioner began working for Martin Marietta Electronics and Missiles Group (Martin Marietta). During 1988 and for part of 1989, petitioner worked at Martin Marietta as a machine operator. She earned wages of $12,609 and $2,799 for those years, respectively.

Mr. Zimmerman operated a sole proprietorship under the name of Zimmerman's Construction (the business). The business constructed driveways, sidewalks, and concrete slabs principally for residential contractors. Mr. Zimmerman learned this trade through on-the-job experience. The address for the business was the Zimmermans' home address.

The Zimmermans had a checking account with Security First Federal Savings and Loan Association (Security) in the name of "Charles R. Zimmerman or Carla J.M. Zimmerman, DBA Zimmerman's Construction" (the business account). Petitioner and Mr. Zimmerman were the authorized signatories on the business account. Income from the business was deposited into this account. Business expenses were paid by check from the business account or sometimes were paid by cash. Petitioner or Mr. Zimmerman also wrote checks to "Cash" from the business account.

During June and July of 1988, petitioner assisted her husband by writing the checks for the business. This was during the time petitioner was at home caring for their newborn daughter, and, according to petitioner, when the "business really

took off" and Mr. Zimmerman needed her help.  Then, petitioner and Mr. Zimmerman had a disagreement about his need for certain lumber supplies he wished to purchase, and Mr. Zimmerman no longer wanted her involved in the business.  After that, to preserve marital harmony, petitioner did not attempt to discuss business matters with her husband.  Mr. Zimmerman began using Rosie's Accounting Service, Inc., to maintain the books for the business.  On a few other occasions during the years at issue, however, petitioner wrote checks from the business account.

Mr. Zimmerman kept receipts and deposit slips in a box in his truck; he usually kept invoices and the checkbook in the box in the truck (excluding the period when petitioner kept the checkbook at home).  Mr. Zimmerman also had a filing cabinet in the house.  When writing checks at home, Mr. Zimmerman would write the checks at the dining table.  At the end of the month, he would take the records to the accountant.

The Zimmermans had a second checking account with Security in the name of "Charles R. or Carla J.M. Zimmerman" which they used primarily for household expenses (the household account).[2] Both spouses were authorized signatories on the household account, but petitioner had sole responsibility for running the household and paying the personal and family expenses from the

---

[2] The loan on Mr. Zimmerman's truck was paid from the household account; those payments totaled $2,431.22 in 1988 and $2,640.24 in 1989.

household account.  Petitioner deposited her Martin Marietta paychecks into the household account.  Mr. Zimmerman also deposited amounts drawn from the business account into the household account.[3]  Total deposits into the household account during the period December 19, 1987 through December 19, 1988, were $16,821.28; total deposits for the period December 20, 1988 through December 19, 1989, were $26,711.36.  Expenses paid from the household account during those periods totaled $16,627.36 and $26,664.90, respectively.

From May through September of 1988, the Zimmermans had a savings account at Security titled "Charles R. or Carla J.M. Zimmerman"; only $100 was deposited into this account.  In December of 1988, the Zimmermans opened a savings account for their daughter, Brooke, titled "Brooke Adele Zimmerman, Minor by Carla or Charles Zimmerman".  Deposits into the latter account during the period December 1988 through December 1989 totaled $661.81.

The Zimmermans purchased a house in July of 1988, for $45,000.  For the preceding year, they had rented this house with an option to buy.  At closing, the Zimmermans received a rent credit of $1,800 and a credit for the option deposit of $2,500;

---

[3]  Mr. Zimmerman testified he deposited about $1,400 to $1,500 per month into the household account in 1988 and about $2,000 per month in 1989.  However, in 1988 he apparently only made such deposits for a few months.  After petitioner quit her job at Martin Marietta in early 1989, Mr. Zimmerman made such deposits into the household account regularly.

they took out a mortgage for the remaining $40,700 of the purchase price. The cash due from the Zimmermans at closing was $154.45 for tax, stamps, and recording fees. The Zimmermans' monthly mortgage payment was $420.10, for total payments of $1,680.40 in 1988. The mortgage payment increased to $450.10 per month in August of 1989, for total mortgage payments of $5,191.20 in 1989.

During the years at issue, the Zimmermans purchased no expensive items, nor did they take any trips other than to attend family funerals. They did not belong to any clubs. Petitioner purchased many of the household items and baby supplies at K-Mart and Wal-Mart.

For the years at issue, petitioner filed joint Federal income tax returns with her husband, Charles R. Zimmerman.[4] Those returns were prepared by Rosemarie Jacques of Rosie's Accounting Service, Inc., who held herself out as a certified public accountant. On the Zimmermans' Form 1040 for the taxable year 1988, they reported $2,000 in wages, $1,376.20 in net Schedule C business income, and no other income; an earned income

---

[4] The petition in this case was originally captioned in the names of both spouses, but the attorney filing that petition had not been authorized to represent Mr. Zimmerman. By order dated May 27, 1994, the Court afforded Mr. Zimmerman an opportunity to ratify and affirm the filing of the petition on his behalf. No response from Mr. Zimmerman having been received, the Court, by order dated July 6, 1994, dismissed the case for lack of jurisdiction as to Mr. Zimmerman and changed the caption of the case.

credit of $474 was claimed.  The Form W-2 attached to the 1988 return reflects $2,000 paid to Mr. Zimmerman by Staff Leasing, Inc.  On their Form 1040 for 1989, the only income item reported was $808.37 in net Schedule C business income; an earned income credit of $114 was claimed.  Petitioner signed the returns but claims that she did not look at the returns when she signed them.

After examination of the returns, respondent increased the Zimmermans' income as follows:

| Item | Taxable Year 1988 | Taxable Year 1989 |
| --- | --- | --- |
| Wages | $12,609 | $2,799 |
| Interest income | 115 | 160 |
| Dividend income | 31 | --- |
| Schedule C income | 27,613 | 8,273 |
| Schedule C expenses | 11,125 | 43,980 |
| Totals | $51,493 | $55,212 |

Respondent increased self-employment tax by $5,223 and $6,250, and disallowed (recaptured) the earned income credit of $474 and $114, for 1988 and 1989, respectively.

The omitted wages, interest income, and dividend income are items attributable to petitioner; the increases in Schedule C income and the disallowance of portions of the Schedule C expenses are items attributable to Mr. Zimmerman.  Petitioner concedes that she failed to report her W-2 wages from Martin Marietta, her dividends, and her interest income in the amounts as determined by respondent.  Petitioner seeks to be relieved of liability as an innocent spouse as to the Schedule C items attributable to Mr. Zimmerman.

OPINION

Normally, spouses who have filed a joint return are jointly and severally liable for the tax due.  Sec. 6013(d)(3).  However, section 6013(e)(1) relieves a spouse of liability for the tax, including interest, penalties, and other amounts, attributable to the substantial understatement of tax of the other spouse, if the spouse meets the following requirements:  (1) A joint Federal income tax return was filed; (2) there is a substantial understatement of tax attributable to grossly erroneous items of the other spouse; (3) in signing the return, the alleged innocent spouse did not know, and had no reason to know, of the substantial understatement; and (4) taking into account all the facts and circumstances, it would be inequitable to hold the alleged innocent spouse liable for the deficiency attributable to such substantial understatement.  Sec. 6013(e)(1).

The taxpayer has the burden of proving that he or she meets each of these requirements.  Feldman v. Commissioner, 20 F.3d 1128, 1134-1135 (11th Cir. 1994), affg. T.C. Memo. 1993-17; Stevens v. Commissioner, 872 F.2d 1499, 1504, (11th Cir. 1989), affg. T.C. Memo. 1988-63.  A failure to prove any one of these requirements will prevent the taxpayer from qualifying for relief.  Feldman v. Commissioner, supra at 1135; Stevens v. Commissioner, supra; Bokum v. Commissioner, 94 T.C. 126, 138 (1990), affd. 992 F.2d 1132 (11th Cir. 1993).  Respondent has

conceded that petitioner meets the first two requirements of section 6013(e)(1).

A taxpayer seeking innocent spouse relief must establish that he or she in signing the return did not know, and had no reason to know, that there was a substantial understatement of tax. Sec. 6013(e)(1)(C). Petitioner says she did not know because she did not look at the tax returns when she signed them. However, a taxpayer cannot simply turn a blind eye to what is disclosed on the tax returns or to what is omitted from the tax returns. The innocent spouse provision is "designed to protect the innocent, not the intentionally ignorant." Cohen v. Commissioner, T.C. Memo. 1987-537.

A spouse has reason to know of a substantial understatement if a reasonably prudent taxpayer under the taxpayer's circumstances at the time of signing the return could be expected to know the return was erroneous or that further investigation was warranted. Stevens v. Commissioner, supra at 1505; Bokum v. Commissioner, supra at 148. The test establishes a duty of inquiry. Stevens v. Commissioner, supra. If a spouse knows enough facts to be put on notice of the possibility of a substantial understatement, she has a duty to inquire further. Guth v. Commissioner, 897 F.2d 441, 444-445 (9th Cir. 1990), affg. T.C. Memo. 1987-522.

Factors to be considered in determining whether the spouse had reason to know are the alleged innocent spouse's level of

education; the spouse's involvement in the family's business and financial affairs; the presence of expenditures that appear lavish or unusual when compared to the family's past levels of income, standard of living, and spending patterns; and the culpable spouse's evasiveness and deceit concerning the couple's finances. <u>Stevens v. Commissioner</u>, 872 F.2d at 1505; <u>Flynn v. Commissioner</u>, 93 T.C. 355, 365-366 (1989).

Petitioner possessed a high school education and no training in bookkeeping. She was responsible for running the household, paying the personal and family expenses, and maintaining the checkbook for the household account. The money deposited in the household account, beyond that from petitioner's paycheck while she was working, came from the business. For a short period during the years at issue, petitioner assisted her husband in the business by writing checks. She had access to the checkbook for the business account at other times. There is no evidence of any evasiveness or deceit on the part of her husband with respect to the finances of either the family or the business.

The family's expenses were modest and the amounts deposited into the household account were in keeping with these expenses. However, the Zimmermans' tax returns reported extremely small amounts of business income, much smaller than the amounts deposited into the household account. In 1988 petitioner wrote checks on that account of some $16,000 and in 1989 wrote checks

of some $26,000.  The Zimmermans' tax returns reported total income of only $3,376.20 for 1988 and $808.37 for 1989.

The returns as filed had very few entries and were rather simple.  Had petitioner made even a cursory review of the returns, she would have been alerted to the fact that none of her W-2 income was reported and that at least some income from the business had been omitted.  Petitioner had a duty to inquire about these omissions.  The total amount of income reported each year was minuscule compared to the amount of money flowing into her household account.  Thus even a glance at the tax returns would have put a reasonable person on notice that something was wrong.  Petitioner wrote checks for mortgage payments in 1989 that alone totaled $5,191.20.

We hold that petitioner knew or had reason to know of the substantial understatements of tax.  Therefore, she does not qualify for relief under section 6013(e), and we need not consider whether it would be inequitable to hold her liable.

In keeping with the foregoing,

<u>Decision will be entered</u>

<u>for respondent.</u>