T.C. Memo. 2013-292

UNITED STATES TAX COURT

BRENDA REILLY-CASEY, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6558-11.                    Filed December 30, 2013.

<u>Richard Ager Uffelman</u>, for petitioner.

<u>Nhi T. Luu</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

KROUPA, <u>Judge</u>:  This case is before the Court in response to a

determination notice under section 6015(e)[1] concerning petitioner's tax liabilities

---

[1]All section references are to the Internal Revenue Code, as amended and in effect at all times relevant, and all Rule references are to the Tax Court Rules of

(continued...)

**[\*2]** for 2006 and 2007 (years at issue). We must decide whether petitioner is entitled to relief from joint and several liability under section 6015. We hold that petitioner is not.

## FINDINGS OF FACT

Some of the facts have been deemed stipulated pursuant to Rule 91(f) and are so found. The stipulation of facts and the accompanying exhibits are incorporated by this reference. Petitioner resided in Oregon when she filed the petition.

Petitioner has been a successful realtor since the 1980s. She often ranked in the top 10% of her company's annual sales rankings. Dann Casey worked for the same company, and petitioner and Mr. Casey (collectively, couple) were married in 1993.

Petitioner and Mr. Casey each owned various single-family and multiunit residential properties before, during and after the years at issue. Petitioner owned at least three properties during the years at issue, including 7534 SW Elmwood Street in Portland, Oregon (Elmwood property). The couple resided at the Elmwood property between 1995 and October 2006. The couple then resided at

---

[1](...continued)
Practice and Procedure, unless otherwise indicated.

[*3] 5043 SE 141st Place in Portland, Oregon (141st Place property) from November 2006 until 2012.  Mr. Casey owned the 141st Place property and paid the mortgage and all associated expenses.  Petitioner consequently leased the Elmwood property and collected $9,900 in annual rent.

Mr. Casey purchased four parcels of real property and invested in a limited liability company during the years at issue.  Mr. Casey also owned residential properties in Arizona and Nevada.  Petitioner periodically used and enjoyed these properties, and she was added to the title of the property in Arizona.

Petitioner periodically collected rents and facilitated maintenance on Mr. Casey's properties.  Petitioner lent Mr. Casey $161,250 in 2006 and 2007, $60,000 of which remains outstanding.  Petitioner also lent to Mr. Casey's associate $80,000 that partially funded another real property purchase with Mr. Casey.

A return preparer assisted petitioner and Mr. Casey with jointly filing Forms 1040, U.S. Individual Income Tax Return, for the years at issue (joint returns).  Petitioner provided a completed questionnaire and documentation to the return preparer.  Petitioner then followed up by telephone with the return preparer.  The return preparer electronically filed the joint returns.  Petitioner knew that the joint returns had been electronically filed.  Petitioner received hard copies of the joint returns soon after the return preparer filed them.

[*4]   Respondent issued to the couple a deficiency notice for the years at issue. Respondent determined deficiencies of $184,385 for 2006 and $36,752 for 2007 (collectively, understatements) and accuracy-related penalties.  Respondent determined that the couple had failed to report income, overstated interest and claimed erroneous deductions from real estate activities (real estate items). Respondent also determined that the couple had failed to report an Oregon State income tax refund (Oregon refund) received in 2006 and income from pension or annuities, qualified dividends, capital gain distributions and Social Security for the years at issue.  The couple did not file a petition with this Court for redetermination of the determinations in the deficiency notice.

Petitioner later submitted to respondent Form 8857, Request for Innocent Spouse Relief, and Form 12150, Questionnaire for Requesting Spouse. Respondent denied petitioner's request for relief.[2]  Petitioner timely filed a petition with this Court regarding respondent's denial of relief.

Petitioner and Mr. Casey dissolved their marriage in 2012.  The uncontested divorce decree did not allocate any payments for outstanding taxes, spousal support, division of property or repayment of any outstanding loans.

---

[2]Petitioner requested relief in July 2010.  Respondent denied the request in December 2010.

**[\*5]** Petitioner's net worth exceeds $1 million, and her monthly income exceeds her monthly expenses. Petitioner did not suffer from poor mental or physical health during the years at issue or when she requested relief from joint and several liability.

Petitioner filed Federal income tax returns for 2009 and 2010 more than three years late. Petitioner has not filed a Federal income tax return for 2011.

OPINION

We must decide whether petitioner is entitled to relief from joint and several liability for the joint tax obligations for the years at issue. Petitioner requests relief from tax liabilities from the real estate items and unreported income from the Oregon refund. Petitioner contends she neither knew nor had constructive knowledge of the understatements because she failed to review the joint returns and was unaware of Mr. Casey's finances. Respondent argues that petitioner has not established that she meets the requirements for relief. We agree with respondent.

I. Standard of Review and Burden of Proof

This Court applies a de novo scope and standard of review to a taxpayer's request for innocent spouse relief. Porter v. Commissioner, 132 T.C. 203, 210 (2009). The spouse requesting relief generally bears the burden of proof. See

**[\*6]** Rule 142(a); <u>Alt v. Commissioner</u>, 119 T.C. 306, 311 (2002), <u>aff'd</u>, 101 Fed. Appx. 34 (6th Cir. 2004); <u>Young v. Commissioner</u>, T.C. Memo. 2012-255. Petitioner has not presented credible evidence relevant to the disputed factual issues to shift the burden to respondent. <u>See</u> sec. 7491(a).

## II. Relief From Joint and Several Liability

We begin with the general principles of joint returns. A married taxpayer may elect to file a joint Federal income tax return with his or her spouse. Sec. 6013(a). Each spouse filing the return is jointly and severally liable for the entire tax shown on the return or otherwise determined to be due. Sec. 6013(d)(3); <u>Cheshire v. Commissioner</u>, 115 T.C. 183, 188 (2000), <u>aff'd</u>, 282 F.3d 326 (5th Cir. 2002). A taxpayer may seek relief from joint and several liability that arises from a joint return in certain situations and subject to a variety of conditions. <u>See</u> sec. 6015. Petitioner contends she qualifies for innocent spouse relief under subsection (b) and equitable relief under subsection (f).[3]

### A. Relief Under Subsection (b)

The parties dispute whether petitioner is entitled to relief from joint and several liability for an understatement under subsection (b). The requesting

---

[3]The parties stipulated that petitioner is not eligible for relief under sec. 6015(c).

**[\*7]** spouse must establish that he or she did not know and had no reason to know of the understatement when signing the return.[4]  See sec. 6015(b)(1)(C); sec. 1.6015-2(a), Income Tax Regs.  A requesting spouse had reason to know of an understatement if a reasonably prudent taxpayer in his or her circumstances would have known that the tax liability stated was erroneous or that further investigation was warranted.  Guth v. Commissioner, 897 F.2d 441, 443-445 (9th Cir. 1990), aff'g T.C. Memo. 1987-522.  We consider the nature and relative amount of the erroneous item, the couple's financial situation, the requesting spouse's educational background and business experience, whether the requesting spouse participated in the activity that resulted in the erroneous item, whether the requesting spouse inquired about the item and whether the erroneous item represented a departure from a recurring pattern reflected in prior years' returns. Sec. 1.6015-2(c), Income Tax Regs.  This is a factual question that we decide based on the entire record.  Guth v. Commissioner, 897 F.2d at 443-445.

Petitioner contends she had no reason to know of the understatements because she did not sign the joint returns.  We find this contention unbelievable.

---

[4]A requesting spouse must satisfy five requirements under sec. 6015(b). Respondent concedes that joint returns were filed and petitioner timely sought relief.  See sec. 6015(b)(1)(A), (E).  The other two requirements are moot in light of our holding regarding the lack of knowledge requirement.

[*8] Her testimony is insufficient to establish that she did not sign the joint returns. Even if she did not sign the joint returns, the record demonstrates that petitioner spoke with the return preparer, authorized the return preparer to file the joint returns, knew the joint returns had been filed and received hard copies of the joint returns. Petitioner tacitly consented to the joint return filings for the years at issue. See Reifler v. Commissioner, T.C. Memo. 2013-258, at *15. And there is no indication that she sought to review the joint returns after each was filed or objected to either Mr. Casey or the return preparer. Petitioner is charged with knowledge of the joint returns. See Barranco v. Commissioner, T.C. Memo. 2003-18.

Petitioner also knew about the items and surrounding circumstances such that she should have understood the stated tax liabilities were erroneous or at least inquired further. Petitioner is an experienced real estate broker who owns multiple residential properties. Petitioner assisted in managing Mr. Casey's properties. Petitioner also knew that Mr. Casey owned and sold residential properties, even lending money to Mr. Casey and his business partner. Petitioner was aware of the transactions underlying the real estate items. See, e.g., Bokum v. Commissioner, 94 T.C. 126, 146 (1990), aff'd, 992 F.2d 1132 (11th Cir. 1993). Petitioner had a duty of inquiry and ignored facts that would have led a reasonably prudent

[*9] taxpayer to inquire further.  See Butler v. Commissioner, 114 T.C. 276, 283-284 (2000); Terzian v. Commissioner, 72 T.C. 1164, 1170 (1979); Thomason v. Commissioner, T.C. Memo. 1994-418.  Further, petitioner failed to show that she had no reason to know of improper deductions that would give rise to substantial understatements.  See Price v. Commissioner, 887 F.2d 959, 963 (9th Cir. 1989).

Similarly, petitioner failed to establish that she had no reason to know about the Oregon refund income.  The Oregon refund resulted from a joint State income tax return the couple filed.  Petitioner did not establish that (or even suggest why) she was ignorant of the couple's Oregon tax liability for 2005 or that she was unaware of the Oregon refund.

Petitioner has not established that she did not know or had no reason to know of the understatements.[5]  Petitioner is unable to satisfy this requirement.  Thus, we need not consider the other requirements for relief under subsection (b). See Alt v. Commissioner, 119 T.C. at 313.  Accordingly, petitioner is not entitled to relief from joint and several liability under subsection (b) for the years at issue.

---

[5]Petitioner neither requests nor argues for relief resulting from other items. We deem that petitioner concedes relief with respect to other items.

**[*10]**  B.  Equitable Relief Under Subsection (f)

We now consider whether petitioner qualifies for relief under subsection (f). The Commissioner may relieve a requesting spouse of joint liability if it is inequitable to hold that spouse liable for any deficiency or unpaid tax.  Sec. 6015(f); sec. 1.6015-4(a), Income Tax Regs.  Equitable relief under subsection (f) is available only when the spouse does not qualify for relief under subsections (b) and (c).  Fernandez v. Commissioner, 114 T.C. 324, 329-331 (2000).  A requesting spouse must satisfy seven threshold conditions before a request under subsection (f) will be considered.[6]  See Rev. Proc. 2013-34, sec. 4.01, 2013-43 I.R.B. 397, 399.  A requesting spouse that satisfies the threshold conditions must then demonstrate that equitable relief is appropriate under certain factors.  Id. secs. 4.02 and 4.03, 2013 I.R.B. at 400.

---

[6]We may consider guidelines the Commissioner prescribed in determining whether a requesting spouse is afforded equitable relief under subsec. (f).  See Pullins v. Commissioner, 136 T.C. 432, 438-439 (2011).  We note that the parties suggest we apply the proposed guidance in Notice 2012-8, 2012-4 I.R.B. 309.  We have declined to do so because Notice 2012-8, supra, had not become final.  See, e.g., Hudgins v. Commissioner, T.C. Memo. 2012-260, at *15.  The Commissioner has since promulgated final guidelines.  See Rev. Proc. 2013-34, 2013-43 I.R.B. 397.  We will evaluate petitioner's request for equitable relief under the guidance in Rev. Proc. 2013-34, supra.

**[*11]**        1. <u>Threshold Conditions</u>

Respondent concedes that petitioner satisfies six of the seven threshold conditions. The seventh condition is that the income tax must be attributable to an item of the nonrequesting spouse or an underpayment resulting from the nonrequesting spouse's income, unless an enumerated exception applies. <u>See</u> <u>id.</u> sec. 4.01(7). Respondent concedes that petitioner satisfies the seventh threshold condition with respect to at least a portion of each understatement.[7] Thus, petitioner meets the threshold requirements (with respect to portions of the understatements), and we consider petitioner's request for equitable relief.

       2. <u>Facts and Circumstances Test</u>

We now consider the seven factors to determine whether equitable relief is appropriate.[8]

---

[7]Respondent concedes that portions of each understatement should be allocated to Mr. Casey. <u>See</u> sec. 1.6015-3(d)(2)(iii) and (iv), Income Tax Regs. We do not determine the appropriate amounts to allocate based on our holding.

[8]A requesting spouse who satisfies three conditions is entitled to equitable relief under the Commissioner's streamlined procedure. <u>See</u> Rev. Proc. 2013-34, sec. 4.02, 2013-43 I.R.B. at 400. The three conditions are the couple's marital status, potential economic hardship absent relief and whether the requesting spouse knew or had reason to know of the understatement. Petitioner did not meet the economic hardship or knowledge conditions.

**[*12]** The first factor is the couple's marital status. See Rev. Proc. 2013-34, sec. 4.03(2)(a). The couple's marriage was dissolved by divorce decree in April 2012. This factor weighs in favor of granting equitable relief.

The second factor is whether petitioner would suffer economic hardship if relief is not granted. See id. sec. 4.03(2)(b), 2013-43 I.R.B. at 401. Economic hardship exists if satisfying the tax liability in whole or part would cause the requesting spouse to be unable to pay reasonable basic living expenses. Id. Petitioner's monthly income covers her monthly expenses. Further, petitioner has more than $1 million in equity in her real property interests. Satisfying the tax liabilities would not cause petitioner to be unable to pay reasonable basic living expenses. Accordingly, this factor is neutral.

The third factor is whether petitioner knew or had reason to know of an understatement. See id. sec. 4.03(2)(c)(i)(A), (iii), 2013-43 I.R.B. at 401-402. As previously discussed, we find that petitioner did have reason to know of the understatements. In addition, petitioner does not contend she suffered physical or mental abuse. And we find that Mr. Casey did not restrict petitioner's access to financial information. See id. sec. 4.03(2)(c)(i)(A). This factor weighs against granting equitable relief.

**[*13]** The fourth factor is whether either spouse is obligated by divorce decree or other binding agreement to pay the outstanding Federal income tax liability. See id. sec. 4.03(2)(d), 2013-43 I.R.B. at 402. This factor is neutral as the divorce decree does not address the tax liability.

The fifth factor is whether the requesting spouse significantly benefited from an understatement. See id. sec. 4.03(2)(e). Petitioner benefited financially by leasing the Elmwood property while the couple resided at the 141st Place property. Petitioner also used and enjoyed the Nevada and Arizona properties. This factor weighs slightly against relief.

The sixth factor is whether the requesting spouse has made a good-faith effort to comply with the income tax laws in later years. See id. sec. 4.03(2)(f). Petitioner filed returns for 2009 and 2010 three years late and has not filed a return for 2011. This factor weighs against relief.

The seventh and final factor is whether the requesting spouse was in poor mental or physical health. See id. sec. 4.03(2)(g), 2013-43 I.R.B. at 403. Petitioner was not in poor mental or physical health when the joint returns were filed or when she requested relief. This factor is neutral.

In toto, we find that petitioner has not established that equitable relief is appropriate. The facts and circumstances indicate that petitioner had sufficient

**[\*14]** knowledge to detect the understatements and that she benefited from the understatements. Further, she has not complied with the income tax laws in the years following the understatements. And she has not demonstrated that she would be unable to pay reasonable living expenses. We conclude that petitioner does not qualify for equitable relief for either understatement.

In reaching these holdings, we have considered all of the parties' arguments, and, to the extent not addressed, we conclude that they are moot, irrelevant or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.