BILLIE C. RAGER AND WANDA L. RAGER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Rager v. Commissioner
Docket No. 25450-83.
United States Tax Court
T.C. Memo 1984-563; 1984 Tax Ct. Memo LEXIS 113; 48 T.C.M. (CCH) 1456; T.C.M. (RIA) 84563; October 18, 1984. Billie C. Rager and Wanda L. Rager, pro se. Alan S. Beinhorn, for the respondent. FEATHERSTON MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: This case was assigned to and heard by Special Trial Judge Marvin F. Peterson pursuant to the provisions of section 7456(c) and (d) [1] and General Order No. 8 of this Court, 81 T.C. XXIII (1983). After review of the record, the Court agrees with and adopts his opinion which is set forth below. OPINION OF THE SPECIAL *115 TRIAL JUDGE PETERSON, Special Trial Judge: Respondent determined deficiencies and additions to tax in petitioners' 1980 and 1981 Federal income taxes as follows: Addition to Tax
Year
Deficiency
Sec. 6653(a)(1)
Sec. 6653(a)(2)
1980
$2,454
$123
1981
$5,326
$266
50% of interest
due on $5,326
The issues for decision are: 1. Whether gain on the sale of petitioners' personal residence must be included in gross income for the year 1980; 2. Whether petitioners are entitled to a charitable contribution deduction for each of the years involved; 3. Whether petitioners are liable for additions to tax for negligence or intentional disregard of rules and regulations under section 6653(a)(1); 4. Whether petitioners are liable for the addition to tax under section 6653(a)(2) in the amount of 50 percent of the interest due on the underpayment of $5,326 for the year 1981; and 5. Whether damages should be awarded under section 6673. [2]
Petitioners are husband *116 and wife and resided at 1570 Willow Pass Road #23, Pittsburg, California, at the time they filed their petition in this case on September 1, 1983. They filed joint Federal income tax returns for the calendar years 1980 and 1981. 1. Sale of Personal Residence
On their income tax return for 1980, petitioners reported and deferred a gain of $42,065 from the sale of their personal residence. The residence, however, was not replaced within the time specified by section 1034 for the deferral of the gain; thus, petitioners subsequently filed an amended return for 1980 reporting the deferred gain and paying additional tax and interest of $4,632 and $486.30, respectively. The notice of deficiency issued to petitioners did not raise the issue as to the deferral of the gain from the sale of the residence and, with leave of Court, respondent filed an amended answer alleging on that ground an increased deficiency and addition to tax, bringing the total respective amounts to $8,707 and $435. The amount of the gain realized on the sale is not in dispute. Petitioners maintain, however, that the issue regarding inclusion of the gain in petitioners' income is not properly before *117 this Court because petitioners reported the gain on their amended return and paid the tax and interest due thereon. Thus, petitioners argue that no deficiency exists with regard to the gain. Section 6211 defines the term deficiency to mean "the amount by which the tax imposed" by the Code "exceeds the excess of the amount shown by the taxpayer upon his return." Where an amended return is filed after the due date of the original return, it is within respondent's discretion to determine the deficiency on the basis of the original return. Koch v. Alexander,561 F.2d 1115, 1118 (4th Cir. 1977); Miskovsky v. United States,414 F.2d 954, 955 (3d Cir. 1969). This Court has jurisdiction to redetermine an increased deficiency based on an issue first raised in respondent's amended answer. Sec. 6214(a). Jasionowski v. Commissioner,66 T.C. 312, 317 (1976). Thus, the increased deficiency based on inclusion of the gain from the sale of petitioners' residence was properly raised by respondent in his amended answer. Although respondent has the burden of proof on this issue, there is no dispute with regard to the amount of the gain that is includable *118 in gross income. Thus, respondent's determination on this issue is sustained. Although an amended return may be disregarded by respondent for purposes of determining a deficiency for a particular year, items included in an amended return may be pertinent in determining the amount of the liability in petitioners' tax for the year. Thus, credit will be given petitioners for payments made with the amended return in computing their unpaid liability. 2. Charitable Deduction
Petitioner Billie C. Rager was not employed during 1980 and 1981. He was disabled and received a disability stipend of $500 per month. He had previously been employed as a welder. Wanda Rager was employed by Continental Group, Inc. Petitioners also received interest income. The adjusted gross income shown on their returns was $30,009 for 1980 and $42,369 for 1981. Petitioners claimed the charitable contribution deductions in dispute for donations to the Universal Life Church of Modesto, California (ULC Modesto). Petitioner Billie C. Rager (petitioner), testified that he made contributions by issuing checks to ULC Modesto in various amounts totaling $10,008 for 1980 and 16,000 for 1981, over *119 25 percent of petitioners' total income. Petitioner submitted photocopies of the front side only of checks drawn on petitioners' account in the amounts claimed. However, no photocopies of the reverse side of the checks were submitted. Furthermore, petitioner testified that he destroyed the original checks. The checks in question were made payable to the order of "Universal Church of God, ULC." However, the initials "ULC" were crowded into a small space on the checks in a manner indicating that the checks were originally made payable to the "Universal Church of God" and were later altered by the addition of "ULC." Petitioners contend the amounts claimed are deductible since they were paid to ULC Modesto which is an organization described under section 170(c)(2) and qualified as to the years at issue to receive donations for which a charitable deduction is allowed. Respondent concedes that during the years 1980 and 1981 ULC Modesto was an organization described under section 170(c)(2) and possessing an exemption from tax under section 501(c)(3). However, he argues that petitioners have failed to show that the amounts were actually contributed either to ULC Modesto or *120 to pay other charitable organization. We agree with respondent. Petitioners have the burden of proving that they are entitled to the claimed charitable deductions. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.
We give no weight to the photocopies of the front sides of the checks because they appear to have been altered and because they could not be verified. Petitioner, due to his own fault, was unable to produce either the original cancelled checks or photocopies of the side of the checks bearing the bank cancellation stamps. Petitioner also offered as evidence annual receipts of contributions for 1980 and 1981 signed by Rex Ames for the Universal Life Church, Inc., attesting to receipt of the claimed contribution from petitioners. They were identified by Bishop R. E. Imbeau, vice president of ULC Modesto, as summaries of church records prepared under his direction and control. These documents were not admitted into evidence on the ground that the documents were hearsay. Bishop Imbeau testified that he had no personal knowledge of the contents of the documents. Further, although the records of *121 ULC Modesto may have reflected the information shown in the documents, Bishop Imbeau testified that the ULC Modesto book entries were made based upon reports submitted to the ULC Modesto by the other chapters of ULC Modesto, such as the Universal Church of God. He also admitted that the ULC Modesto did not receive any contributions made to the Universal Church of God. Therefore, it is clear that ULC Modesto had no actual knowledge or control over the financial transactions of the Universal Church of God. It is obvious that whatever records of contributions made to the Universal Church of God or any other chapter which are maintained by the ULC Modesto are based only upon pure hearsay evidence. We cannot, therefore, accept such records as proof of contributions made by petitioners. Clearly, petitioners have utterly failed to prove that contributions were made to the ULC Modesto. At most, we can only conclude that the contributions were made to the Universal Church of God which was operated and controlled by petitioners. To the extent contributions were made to the Universal Church of God, they do not qualify as charitable contributions since there is no evidence to show that *122 this organization was a charitable organization under section 501(c)(3).Although the ULC Modesto was classified as a tax-exempt organization during the years involved herein, we have repeatedly held that the charitable exemption granted to ULC Modesto under section 501(c)(3) is not a group exemption. Therefore, the tax exemption of ULC Modesto cannot cause amounts given to other organizations chartered by the ULC Modesto to qualify as deductions under section 170. See Davis v. Commissioner,81 T.C. 806, 815 (1983), and cases cited therein. We conclude that petitioners, having submitted no other credible evidence, have failed to show that they are entitled to the charitable contribution deductions claimed. 3 and 4. Section 6653(a) Additions to Tax
Respondent determined that petitioners were liable for an addition to tax for negligence or intentional disregard of rules and regulations under section 6653(a)(1) for each of the years at issue. In addition, for the year 1981, respondent determined that petitioners were liable for the addition to tax under section 6653(a)(2) since the underpayment of tax in the amount of $5,326 was attributable to negligence *123 or intentional disregard of rules and regulations. In this regard, petitioner testified that he believed he was entitled to the deductions as claimed. We do not accept such a simple answer. Petitioners were aware of cases very similar in nature to their own involving efforts to create deductions through purported charitable contributions to a "church." See Davis v. Commissioner,supra at 820. It follows that petitioners are liable for the addition to tax under section 6653(a)(1) for each of the years at issue and that the total underpayment of tax for the year 1981 is attributable to negligence or intentional disregard of rules and regulations under section 6653(a)(2). 5. Section 6673 Damages
The last issue concerns respondent's motion for damages under section 6673. [3] The facts show that petitioner had no reasonable basis for success. Petitioners were well aware of the evidence needed to support their claimed deductions and should have known that their position was frivolous and without merit. *124 Under these circumstances, respondent's motion will be granted, and we award the United States damages in the amount of $4,000. See Abrams v. Commissioner,82 T.C. 403 (1984). Accordingly, a decision will be entered for the respondent. Decision will be entered for the respondent and an appropriate order will be issued.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.↩
2. At the trial of this case in San Francisco on May 23, 1984, respondent made an oral motion that damages be awarded to the United States under sec. 6673.↩
3. Where petitions are filed after Dec. 31, 1982, as in the instant case, sec. 6673 provides as follows: Whenever it appears to the Tax Court that proceedings before it have been instituted or maintained by the taxpayer primarily for delay or that the taxpayer's position in such proceedings in frivolous or groundless, damages in an amount not in excess of $5,000 shall be awarded to the United States by the Tax Court in its decision. Damages so awarded shall be assessed at the same time as the deficiency and shall be paid upon notice and demand from the Secretary and shall be collected as part of the tax.↩