**Mercedes FLORES, Plaintiff,**

v.

**THE UNITED STATES, Defendant.**

**No. 97–046T.**

United States Court of Federal Claims.

Nov. 28, 2001.

John Leeper, Esquire, El Paso, Texas, for plaintiff.

Mary M. Abate, Tax Division, U.S. Department of Justice, Washington, D.C., for defendant, with whom was Mildred L. Seidman and David Gustafson, Tax Division, U.S. Department of Justice.

## OPINION

ALLEGRA, Judge.

This case is before the court on pending cross-motions for summary judgment, which present a question of first impression involving the so-called "innocent spouse" provisions of the Internal Revenue Code. Relying on these provisions, plaintiff seeks to be relieved of a joint income tax liability deriving from illegal drug income earned, without her knowledge, by her former husband. Before ruling on this claim, this court must first determine whether amendments relaxing the eligibility requirements of the innocent spouse provisions of the Code, enacted as part of the Internal Revenue Service Restructuring and Reform Act of 1998, are, under the effective date provision of that Act, applicable to plaintiff for her taxable year 1988. Although this is a close question, for the reasons that follow, this court ultimates concludes that the amendments do apply to plaintiff.

## I. FACTS

The relevant facts are undisputed and uncomplicated. Plaintiff, Mercedes Flores, and her former husband. Jesus Flores, were married in Texas (a community property state), and divorced in 1993. Prior to their divorce, they lived modestly, with Mr. Flores handling all of the family finances, including preparing and filing their joint tax returns. Mr. Flores was arrested in 1990 and convicted of illegal drug dealing, for which he is currently serving a life sentence. There is no evidence to show that plaintiff knew of his illegal activity.

For the taxable years 1984 through 1987, income from Mr. Flores' illegal activity was not reported on the couple's joint returns. The joint return for 1988, however, reflected "privileged income" of $243,000, and tax due thereon of $70,173. However, only $1,700 of that tax was paid with the return. Plaintiff has stated under oath that she does not remember whether she signed the 1988 return or whether Mr. Flores signed her name, as he often did. Plaintiff has further stated under oath that she never received any benefit from the illegal income and that she and her two children have not received any financial support from Mr. Flores since his incarceration.

After the Internal Revenue Service (IRS) assessed additional taxes for 1984 through 1987, plaintiff contested the asserted liabilities in the United States Tax Court. The case was eventually settled based on the IRS' stipulation that plaintiff was entitled to "innocent spouse" relief under former section 6013(e) of the Internal Revenue Codes of 1954 and 1986 (26 U.S.C.), and that Mr. Flores was liable for 100 percent of the tax deficiencies for all four years (1984–1987). The settlement and the IRS stipulation, however, did not reach plaintiff's joint liability with her former husband for a fifth taxable year that was not before the court, that is, 1988. And, in fact, the IRS eventually initiated collection activity with respect to that liability. Toward that end, in 1993, the IRS seized the Flores' community property, including their home, and applied the proceeds of the sale thereof, amounting to $71,324.39, to the 1988 joint liability.

On February 14, 1994, plaintiff filed a timely refund claim for 1988, requesting a refund of "approximately" $60,000, claiming that she was an "innocent spouse" within the meaning of section 6013 of the Code. The IRS Appeals Office disallowed the claim, on the ground that the 1988 return did not contain a substantial understatement of income. In this regard, it should be noted that former section 6013(e) provided "innocent spouse" relief in situations only where the innocent spouse had signed a joint return, but the return itself gave no indication that there existed substantial taxable income with respect to which the tax was not being paid. 26 U.S.C. § 6013(e) (1997).

The instant suit was timely filed after the refund claim was disallowed. In this action, plaintiff seeks a refund of $36,978 in tax, penalties, and interest, plus statutory interest thereon. On September 7, 2000, plaintiff

filed a motion for summary judgment. On October 17, 2000, defendant filed a cross-motion for summary judgment. On January 3, 2001, oral argument was conducted in this case. At the oral argument, the court raised issues regarding the justiciability of this lawsuit and ordered supplemental briefing on that subject. This briefing was completed on June 15, 2001. Based on its review of these briefs, the court is now convinced that the issues presented by this case are, indeed, justiciable.[1] That preliminary issue resolved, the court deems further oral argument on the merits of the pending motions unnecessary.

## II. DISCUSSION

"Summary judgment is ... an integral part of the Federal Rules," the Supreme Court has stated, and is "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 1). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. RCFC 56, *Hunt v. Cromartie*, 526 U.S. 541, 549, 119 S.Ct. 1545, 143 L.Ed.2d 731 (1999); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

As a general proposition, under section 6013(d)(3) of the Code, if a joint return is filed by a husband and wife, any tax liability deriving from that return is joint and several. In 1971, Congress enacted section 6013(e) in order to address perceived injustices associated with imposing joint and several liability on certain spouses. *See* 26 U.S.C. § 6013(e) (1983) (current version at 26 U.S.C. § 6015(b) (2001)). *See also* S.Rep. No. 91–1537, at 2 (1970), *reprinted in* 1970 U.S.C.C.A.N. 6089 (statute designed "to bring government tax collection practices into accord with basic principles of equity and fairness.") This subsection was later amended in 1984, *see* Tax. Reform Act of 1984, Pub.L. No. 98–369, 98 Stat. 494, 803 (1984), and, as amended, provided that a spouse could be relieved of tax liability if the spouse proved, *inter alia*, that: (i) the joint return contained a substantial understatement of tax attributable to "grossly erroneous" items of the other spouse; (ii) in signing the return, the spouse seeking relief did not know, and had no reason to know, of the substantial understatement; and (iii) under the circumstances, it would be inequitable to hold the spouse seeking relief liable for the substantial understatement. *See Cheshire v. Comm'r*, 115 T.C. 183, 189, 2000 WL 1227132 (2000). The relief granted under this provision was typically referred to as "innocent spouse" relief.

In 1998, as part of the Internal Revenue Service Restructuring and Reform Act of 1998 (the Act), Pub.L. No. 105–206, 112 Stat. 685, Congress repealed section 6013(e) and enacted in its stead a new innocent spouse provision, section 6015 of the Code. This provision significantly relaxed the requirements for receiving innocent spouse relief, providing taxpayers with three avenues for obtaining such relief. The first avenue, found in sections 6015(b)(1) and (2), is similar to former section 6013(e), but requires the taxpayer to elect the relief, provides for the apportionment of relief, and does not require that the understatement stem from a "grossly erroneous" item, but rather only an "erroneous item." The second avenue, section 6015(c), permits a taxpayer who has divorced or separated to elect to have his or her tax

---

1. The court initially was concerned with whether it had jurisdiction to review a determination made by the Secretary of the Treasury not to render innocent spouse relief under section 6015(f) of the Code (discussed, *infra*). In their supplemental memoranda, both parties argue that this court has such jurisdiction, directing this court to the legislative history of section 6015, the cases construing that legislative history, and the amendments made to section 6015 by section 1(a)(7) of the Consolidated Appropriations Act of 2001, Pub.L. No. 106–554, 114 Stat. 2763. Based on its review of these materials, the court now agrees that it has jurisdiction to review whether the Commissioner has abused his discretion under section 6015(f), as well as to determine whether that subsection is applicable to plaintiff under the effective date provisions of the Act. *See, e.g., Butler v. Commissioner*, 114 T.C. 276, 290, 2000 WL 502841 (2000) (concluding that Congress did not intend to commit the determination under section 6015(f) to unreviewable agency discretion).

liability calculated as if separate returns had been filed. Finally, section 6015(f), which is the potentially broadest of the three avenues and the one most directly at issue in this case, provides:

(f) Equitable Relief—Under procedures prescribed by the Secretary, if—

(1) taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either); and

(2) relief is not available to such individual under subsection (b) or (c), the Secretary may relieve such individual of such liability.

The effective date for these provisions provides that they "shall apply to any liability for tax arising after the date of the enactment of this Act and any liability for tax arising on or before such date but remaining unpaid as of such date." The Act, Title III, Subtitle C, § 3201(g)(1), 112 Stat. 740 (1998).

Although plaintiff originally contended she was entitled to relief under the unamended version of section 6013(e) of the Code, she later abandoned that assertion. Neither party now seriously disputes that, for taxable year 1988, plaintiff does not meet the requirements of that section because the joint return filed that year actually disclosed significant income and thus did not reflect an "understatement," as required by this provision.[2] Moreover, it appears beyond peradventure that relief is unavailable to plaintiff under either subsection (b) or (c) of newly-enacted section 6015. At the same time, defendant, on behalf of the IRS, does not dispute that, under the facts and circumstances of this case, plaintiff is equitably entitled to relief under new 6015(f), provided that subsection is applicable to plaintiff under the statute's effective date provision. Indeed, the Secretary of the Treasury has already granted plaintiff some equitable relief under section 6015(f), by agreeing to dismiss the government's counterclaim in this case for interest in the amount of $22,684.31, that had been assessed, but not paid. The focus of the pending motions then is on the effective date provisions of section 3201(g)(1) of

the Act. Because, under this effective date provision, plaintiff's liability for tax clearly did not "arise after the date of the enactment of the" Act, the inquiry here centers on whether "any liability for tax arising on or before" the date of the enactment "remain[ed] unpaid as of such date."

At least one case has held that if a liability arising on or before the date of enactment was fully paid prior to such date, section 6015 does not apply. See Mlay v. IRS, 168 F.Supp.2d 781 (S.D.Ohio 2001). Conversely, several cases have held that if a liability arising on or before the date of enactment was entirely unpaid prior to the date of enactment, section 6015 applies to the entire liability. See Vetrano v. Commissioner, 116 T.C. 272, 277, 2001 WL 423012 (2001); King v. Commissioner, 115 T.C. 118, 121, 2000 WL 1131914 (2000). The case sub judice falls somewhere in the midst of these precedents. Plaintiff essentially argues that since a portion of her liability for tax arising on or before the date of enactment remained unpaid as of such date, the entire amount of her liability for 1988 should be recovered under section 6015(f). Thus, plaintiff argues that the effective date provision should be read to apply to the full amount of any pre-existing liability for a particular taxable year, if any of that liability remained unpaid as of the effective date. Defendant, for its part, asserts that the effective date provisions sweep in only the portions of plaintiff's liability for 1988 that remained unpaid as of the date of enactment. Thus, defendant basically argues that the provision should be read to apply to a pre-existing liability, but only to the actual dollars not paid as of the effective date. This court must decide which of these readings best reflects and effectuates Congress' intent in drafting and passing the effective date provision.

■ In answering this question, the court must first look to whether the statutory language is plain and unambiguous. See United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989); Chevron U.S.A. v. Natural Res.

---

**2.** Ms. Flores was eligible for such relief for her taxable years 1984 through 1987 because her husband's illegal income for those years was not reflected on their joint returns.

*Def. Council*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). In performing this task, it is guided by certain principles of interpretation. The first, a "fundamental canon of statutory construction," is that, "unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979); *Nat'l Data Corp. v. United States*, 50 Fed.Cl. 24, 28 (2001). The second is that "where Congress uses terms that have accumulated settled meaning under . . . the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms." *Field v. Mans*, 516 U.S. 59, 69, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995) (internal citations omitted). Finally, mindful that the amendments to the innocent spouse rules were designed to correct perceived deficiencies and inequities in the prior version of these rules,[3] yet another rule of interpretation applicable here is that curative legislation should be liberally construed to effectuate its remedial purpose. *See, e.g., Tcherepnin v. Knight*, 389 U.S. 332, 336, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967); *Piedmont & N. Ry. Co. v. Interstate Commerce Comm'n*, 286 U.S. 299, 311–12, 52 S.Ct. 541, 76 L.Ed. 1115 (1932).[4]

■ Turning first to the statute's language, the court finds scant evidence of Congress' intent in the plain meaning of the words selected. To be sure, one can readily deduce that the "liability" referred to in the first portion of the second clause of the effective date provision, that is, the "liability for tax arising on or before" the date of enactment, must refer to the tax liability assessed with respect to that tax year. Such an interpretation is consistent with the nature of the income tax, which, under section 1 of the Code, is "a tax imposed for each taxable year" in accordance with prescribed schedules. *See Flora v. United States*, 362 U.S. 145, 149, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960). Regrettably less pellucid is whether, when the effective date provision refers to such liability "remaining unpaid" as of the effective date, it means the entire liability assessed for that year or only the portion thereof that actually is unpaid. The dictionary definitions of the term "liability" sheds no light on which of these interpretations was intended, nor do the multifarious definitions of a liability "remaining unpaid" make the statute's meaning much clearer.[5] Moreover, neither party has offered a common law understanding of the words chosen by Congress, nor can this court discern any that is helpful.

Plainly, then, this statute eminently qualifies as ambiguous, and reference to its legislative history is appropriate. However, like the statutory language itself, the legislative history, unfortunately, proves bereft of any clues to congressional intent. As originally

---

**3.** In this regard, the accompanying House report indicates that "[t]he bill generally makes innocent spouse status easier to obtain." H.R.Rep. No. 105–364, pt. 1, at 61 (1997). The accompanying Senate report similarly states that "[t]he Committee is concerned that the innocent spouse provisions of present law are inadequate." S.Rep. No. 105–174, at 55 (1998). The Conference Committee report then indicates that both of the quoted sentiments are reflected in the final bill. H.R. Conf. Rep. No. 105–599, at 251 (1998), U.S.Code Cong. & Admin.News 1998, 288. *See also Fernandez v. Commissioner*, 114 T.C. 324, 326, 2000 WL 565108 (2000) (Congress enacted section 6015 "as a means of expanding relief to innocent spouses.").

**4.** *See also Silverman v. Comm'r*, 116 F.3d 172, 174–75 (6th Cir.1997) ("The innocent spouse provision should be construed and applied liberally in favor of those for whom it was designed to protect"); *Friedman v. Commissioner*, 53 F.3d

523, 528–29 (2d Cir.1995) (innocent spouse provisions are relief provisions that should be construed liberally); *Mlay, supra* (same). As a relief statute, the provision in question is interpreted differently than those under which a taxpayer simply seeks a deduction or credit. *See National Data Corp. v. United States*, 50 Fed.Cl. 24, 30 (2001). *See also United States v. Hemme*, 476 U.S. 558, 566–67, 106 S.Ct. 2071, 90 L.Ed.2d 538 (1986).

**5.** Not surprisingly, the primary definition of "unpaid" is "not paid." *Webster's Third New International Dictionary of the English Language, Unabridged* 2505 (1993). However, it is interesting that Webster's secondary definition of "unpaid" is "not presented as payment; not cleared by payment." *Id.* The latter phrase, *i.e.*, "not cleared by payment," though in the court's view not determinative, is, nonetheless, seemingly more consistent with plaintiff's view of the statute, than defendant's.

introduced in the House, the effective date provision would have applied only prospectively to tax liabilities arising after the date of enactment. *See* H.R. 2676, 105th Cong., § 321 (1997) (as introduced). In amending the innocent spouse provisions, however, the Senate included the provision applying the new provisions to liabilities "remaining unpaid." *See* S.Rep. No. 105–174, at 60 (1998). And, this provision, after being accepted without modification by the Conference Committee, ultimately became law. But, neither the Senate report nor the Conference Committee report give the slightest hint of how the effective date provision should be construed, both satisfied with essentially restating the provision. *See Id.* at 60; H.R. Conf. Rep. No. 105–599, at 251 (1998), U.S.Code Cong. & Admin.News 1998, 288. Snippets of legislative history—an isolated floor statement and some testimony before the Senate Finance Committee—emphasize a desire by some to make the new "innocent spouse" provisions retroactive.[6] But, even if these isolated views were internally consistent in arguing for the same degree of retroactivity—and they are not—there still would be no basis for attributing them to the Congress, as a whole. *See Garcia v. United States,* 469 U.S. 70, 76, 105 S.Ct. 479, 83 L.Ed.2d 472 (1984). Thus, the limited legislative history of the effective date provision does little more than confirm that the Congress intended the amendment to be retroactive, while leaving unanswered critical questions involving the nature and degree of that retroactivity.

The court thus is presented with a vexing situation—statutory language that is inconclusive and legislative history that is equally barren. But, this court espies several indications that Congress intended the new innocent spouse provisions to apply retroactively on an entire liability basis, rather than to apply only to the portion of a pre-existing liability that had been unpaid. The first such indication derives from the interaction of other innocent spouse provisions in section 6015 with the effective date provisions. In this regard, both section 6015(b), which allows an individual to be relieved of liability for tax attributable to a particular erroneous item on a return, and section 6015(c), which allows an individual to be relieved of any liability not allocable to them, require eligible individuals to make elections to claim that treatment. In both circumstances, the election must occur within two years after the date the Secretary has begun collection activities with respect to the individual making the election. *See* section 6015(c)(1)(E) and 6015(c)(3)(B). Yet, the plain language of both provision reveals that the election, once made, triggers innocent spouse relief not just for the portion of the liability that is the subject of the collection action, but for the entire tax liability (at least to the extent otherwise eligible for innocent spouse relief). *See* section 6015(b)(1) & 6015(c)(3).[7] Emphasizing the retroactive sweep of this provision, the effective date provision provides that the two-year period described in these subsections "shall not expire before the date which is 2 years after the date of the first collection activity after the date of the enactment of this Act." Section 3201(g)(2). Thus, under this provision, even if a liability had been partially paid and even if some collection activity had occurred before the date of the enactment of the Act, a taxpayer still is entitled to innocent spouse relief as to amounts paid prior to the Act's passage, provided she makes the proper election within two years after the first collection activity that occurred after the date of the Act's enactment.

---

6. *See* 144 Cong. Rec. § 725 (daily ed. Feb. 12, 1998) (statement of Sen. Kyl) (urging full retroactivity, or at least making it retroactive "to all cases pending on the date of enactment"); *Hearings on IRS Restructuring and Oversight before the Senate Committee on Finance,* 105th Cong. 314 (1998) (statement of Michael E. Mares) (retroactive to apply to returns for the last three tax years); *id.* at 148 (statement of Elizabeth Cockrell) (urging that the statute be made "retroactive").

7. In this regard, section 6015(b) provides that if an election is made under that subsection, the innocent spouse "shall be relieved of liability for tax ... for such taxable year to the extent such liability is attributable to such understatement." Similarly, section 6015(c) provides that if an election is made under that subsection, the innocent spouse's "liability for any deficiency which is assessed with respect to the return shall not exceed the portion of such deficiency property allocable to the individual."

But, what if there is no collection activity post-enactment, rendering section 3201(g)(2) inapplicable? Under defendant's view of the general effective date provision in section 3201(g)(1), an election under sections 6015(b) or 6015(c) would apply only to the portion of a liability that remained unpaid as of the effective date. This result seems disharmonious with the broad language and purpose of those subsections for two reasons. First, in so limiting the scope of sections 6015(b) and (c), defendant's interpretation of the effective date provisions seemingly is at odds with the language in those subsections suggesting that Congress intended that they should apply to entire taxable years and the entire tax liabilities associated therewith. At the very least, defendant's interpretation of the effective date provision would severely cramp the utility of subsection (b) and (c) of 6015, a limitation no where else hinted at in either the statute's language or its legislative history. Second, in applying these subsections, a somewhat anomalous result would flow from defendant's interpretation of the effective date provision—if no collection activity occurred after the effective date, a taxpayer could obtain relief only as to the portion of the pre-existing liability that remained unpaid, but if any collection activity whatsoever occurred after the effective date, even as to the minutest portion of the liability, then the taxpayer's entire tax liability would be eligible for innocent spouse relief. In the courts' view, it is far more likely that Congress did not intend such a dramatically different result to flow from the Commissioner's decision to continue collection activities post-enactment, but instead intended the effective date provision to be consonant with the remainder of the statute, thereby allowing the innocent spouse relief of section 6015(b) and (c), and with them the relief afforded by section 6015(f), to apply to any liability for a particular taxable year providing it was not fully paid as of the effective date.

Now, one might reasonably ask—and defendant expressly does ask—can it be true that the Congress intended that even if one dollar of a prior liability remained unpaid as of the effective date, the entire liability could be relieved under the new provision? The answer appears to be "yes." Though, at first blush, this result might seem a bit startling, it finds solid precedent in decisions that have treated a tax liability for a particular year as being unitary and "paid" only when fully collected. Some of these decisions, for example, construe section 6511 of the Code and its statutory predecessors (dating back to the Revenue Act of 1924, ch. 234, § 281(b), 43 Stat. 253, 301), which prescribe the statute of limitations for filing a refund claim as being triggered when a tax is "paid." Courts interpreting this language have held that the limitation period begins to run as to an entire tax liability only when the last dollar of the liability is paid, reasoning that "the tax liability is unitary and not discharged until paid in full." *Union Trust Co. of Rochester v. United States*, 70 F.2d 629, 630 (2d Cir.1934), *cert. denied*, 293 U.S. 564, 55 S.Ct. 99, 79 L.Ed. 664 (1934). *See also United States v. Clarke*, 69 F.2d 748, 749 (3d Cir.1934), *cert. denied*, 293 U.S. 564, 55 S.Ct. 75, 79 L.Ed. 664 (1934).

To similar effect is *Hills v. United States*, 55 F.2d 1001, 1003 (Ct.Cl.1932), *modifying* 73 Ct.Cl. 128, 50 F.2d 302 (1931). In that case, the executrix of an estate paid part of the estate tax on July 26, 1921, and the remainder on May 1, 1925. On October 2, 1926, she filed a claim for refund. This claim was denied, in part, by the Commissioner, who asserted that only the portion of the tax paid within four years of the refund claim (*i.e.*, the portion paid in 1925) was recoverable. At the time, the statute of limitations on filing refund claims for estate taxes, section 3228 of the revised statutes (R.S. 3228), provided that such claims had to be presented to the Commissioner "within four years, next after the payment of such tax, penalty, or sum." As described by the court, the government's main contention in *Hills* was that when "the words 'such tax' are used in the statutes which fixed the limitation of recovery in this case, they refer, not to the whole of the tax assessed and paid by the taxpayer, but to that portion of the tax which was paid within the period of limitations fixed for instituting an action to limitations refund therefor. . . ." 55 F.2d at 1001. Like the defendant in the instant case, then, the government in *Hills* thus essentially attempted to read the words

"a portion of" into the statute. In language clearly applicable to the instant case, the court rejected this construction, refusing to imply this language into the statute. In this regard, it observed that "numerous instances in the various revenue acts show that Congress has always been careful to differentiate between the use and meaning of the word 'tax' and the words 'a portion of the tax,' and, where the provisions of the act were intended to have any application to a portion of the tax it has been so specified." *Id.* at 1003.[8]

The decisions, and their holdings that an income tax is not paid until paid in full, presage the Supreme Court's seminal decision in *Flora v. United States*, 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960). In that case, the Supreme Court, relying on several of the cases discussed above, 362 U.S. at 149 n. 5, 80 S.Ct. 630, held that under 28 U.S.C. § 1346(a)(1),[9] a district court does not have jurisdiction of an action by a taxpayer for refund of a part payment made by him on an assessment for an alleged deficiency in his income tax. Rather, the court concluded that such a taxpayer must pay the full amount of the assessment before pressing a valid refund suit under section 1346(a)(1). In so ruling, the court relied on the "nature of the income tax," finding at to be imposed on a unitary basis that precluded suits based

only on a partial payment. 362 U.S. at 149, 80 S.Ct. 630. The Court further noted that had Congress intended "to authorize suits for refund of any part of a tax" it could have done so "merely by use of the phrase 'a tax or any portion thereof.'" *Id.* at 150, 80 S.Ct. 630. Since Congress failed to include any reference to "any portion thereof" in the refund suit provision, the Court concluded that full payment of a tax liability was a precondition to the filing of such a suit.

In short, this case law holds that, in at least some tax contexts, a tax liability is not paid until the last dollar thereof has been collected—in other words (not coincidentally, the words of the effective date provision at issue), until that last dollar is collected, such a liability "remain[s] unpaid."[10] If this has historically been true for other provisions of the Internal Revenue Code, the court sees no reason why section 3201(g)(1) should not be similarly interpreted, particularly in light of this court's obligation to construe liberally the innocent spouse amendments as curative legislation. The fact that such an interpretation of the effective date provision harmonizes with other provisions in section 6015 (*e.g.*, sections 6015(b) & (c)) makes this conclusion all the more compelling.

---

**8.** Courts have reached similar results in construing the interest provisions of revenue acts predating the 1939 Code, which allowed for 6 percent interest "from the date such tax.... was paid to the date of the allowance of the refund." Construing when a tax was "paid" for purposes of this provisions, the Supreme Court held that it was irrelevant that quarterly tax payments exceeded one-fourth of the proper tax and instead found that interest on a refund ran only from the date on which a payment, when combined with earlier payments made, exceeds the whole tax due for that year. *See Blair v. United States ex rel. Birkenstock*, 271 U.S. 348, 351, 46 S.Ct. 506, 70 L.Ed. 983 (1926).

**9.** Section 1346(a)(1) provides the district courts shall have jurisdiction, concurrent with this court, of

(1) Any civil action against the United States to the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any

manner wrongfully collected under the internal-revenue laws....

**10.** In contending to the contrary, defendant relies on *Rager v. Commissioner*, 48 T.C.M. (CCH) 1456, 1458, *aff'd*, 775 F.2d 1081 (9th Cir.1985), in which the Tax Court stated that "credit will be given petitioners for payments made with the amended return in computing their unpaid liability." However, in *Rager*, the Tax Court neither was called upon to critically analyze what was meant by the phrase "unpaid liability" nor did its decision even hinge on whether the liability in question was paid or unpaid. The only other "authority" upon which defendant relies is a private letter ruling. However, such rulings may not be cited or used as precedent. *See* section 6110(k)(3) of the Code; *Vons Cos. v. United States*, 51 Fed.Cl. 1 (Fed.Cl.2001). Although not cited by defendant, the court notes that the IRS has issued a revenue procedure, Rev. Proc.2000–15, 2000–1 C.B. 447, to provide guidance for taxpayers seeking equitable relief from federal tax liability under section 6015. Although the revenue procedure discusses the effective date provision, the court does not find that discussion illuminating on the issue at hand.

## III. CONCLUSION

For the foregoing reason, the court concludes that, under the effective date provision of the Act, plaintiff is eligible for the relief described in section 6015(f). Plaintiff's motion for summary judgment is, therefore, granted, in part, and defendant's cross-motion for summary judgment is hereby denied. By January 14, 2002, the parties shall file a joint status report with the court indicating how they believe this case should proceed.