**Mavis E. JONES, a/k/a Mavis E. Crahan, n/k/a Sunny Crahan, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. CIV. A3–98–142.**

United States District Court, D. North Dakota, Southeastern Division.

March 31, 2004.

See also 2000 WL 33122747.

Garry A. Pearson, Jon Jay Jensen, Pearson Christensen, Grand Forks, ND, for Plaintiff.

Lawrence A. Casper, Donald N. Dowie, Jr., Michael S. Raum, US Department of Justice, Washington, DC, for Defendant.

## MEMORANDUM AND ORDER FOR JUDGMENT

KLEIN, United States Magistrate Judge.

This matter was tried before the court, the Honorable Karen K. Klein presiding, on Thursday, May 15, 2003. Wayne Bradley, Kathleen Meyers, and Sunny Crahan provided testimony during the trial. For the following reasons, the court finds that plaintiff Sunny Crahan is entitled to innocent spouse relief pursuant to § 6015(b) of the Internal Revenue Code.

### Brief Factual Background

Plaintiff Sunny Crahan, previously known as Mavis Jones, was married to Frank Jones. During their marriage, Frank Jones owned and operated a family insurance agency in Fargo, North Dakota. Plaintiff was not employed in the agency, and she had no direct involvement in her husband's business affairs. The agency was sold in the late 1970's. (Sunny Crahan Testimony, Trans. p. 66, lines 17–20, p. 67, lines 12–21; Kathleen Meyers Testimo-

ny, Trans. p. 37, lines 18–25, p. 38, lines 1–13). After the sale of the insurance agency, Frank Jones engaged in a variety of business activities, including real estate development and oil and gas development. (Kathleen Meyers Testimony, Trans. pp. 38–39). Frank Jones passed away in October 1989. Plaintiff has since remarried, hence the name change.

In 1980, Frank Jones invested in a Finalco computer equipment leasing tax shelter (hereinafter "Finalco Transaction"). On their joint income tax returns, the Joneses claimed substantial losses and tax deductions as part of this shelter for the years 1981–1984.[1] These losses were subsequently disallowed by the Internal Revenue Service and give rise to the liabilities at issue in this case. The tax liabilities determined by the IRS were as follows:

| Tax Year | Tax Due (Refund) |
|---|---|
| 1981 | $12,319 |
| 1982 | $ 8,360 |
| 1983 | $ 7,169 |
| 1984 | $ 5,787 |
| **Total** | **$33,635** |

(Stipulation of Facts, No. 13). The 1981 additional tax assessment was made on December 23, 1991. The 1982–1984 additional tax assessments were made on December 16, 1997. In addition, the IRS assessed interest and penalties.

On July 21, 1997, Sunny Crahan made a payment of $11,525.62 toward the 1981 assessment. On January 20, 1999, she made an additional payment of $21,122.77. (Plaintiff's Exhibit No. 1). Between April 2, 1998 and April 13, 2002, Sunny Crahan made a number of miscellaneous payments totaling $1,678.64. (Plaintiff's Exhibit No. 1). As such, Sunny Crahan has paid a total of $34,327.03 toward the 1981 tax

---

1. The Joneses also reported income from the Finalco Transaction on their tax returns for tax years 1985–1989. The claim for refund for these tax years was precluded by the statute of limitations.

liability. Due to the lapse of time and accrual of interest, the account balance at trial remained at $42,311.12. (Plaintiff's Exhibit No. 1).

Sunny Crahan paid $45,497.38 toward the 1982 liability on July 21, 1997. (Plaintiff's Exhibit No. 2). The amount of $10,776.99 remained due and owing at the time of trial for the 1982 liability. (Plaintiff's Exhibit No. 2).

No payments have been applied to the 1983 tax liability, resulting in a balance, with interest, of $43,889.40 as of the time of trial. (Plaintiff's Exhibit No. 3). Additionally, no payments have been applied to the 1984 liability. That liability, with the accrual of interest, grew to $42,456.71 as of the trial date. (Plaintiff's Exhibit No. 4). Sunny Crahan has made payments totaling $79,824.41, applied to the 1981 and 1982 liabilities.

In April 1998, plaintiff filed amended returns for the years 1981 and 1982, in which she asserted she "is not liable for the deficiency in tax assessed by the IRS as she is an innocent spouse." Exhibits B and C to Plaintiff's Complaint. In September 2000, plaintiff filed Form 8857 seeking innocent spouse relief from liability for 1981–1984. Exhibit 38.

The procedural history of this action is long and convoluted. Summarily, in 1998, plaintiff commenced this action seeking a refund. The government filed a motion to dismiss and the court granted the motion with respect to tax years 1986 to 1989, as well as 1981 to 1984, except to the extent the deficiencies could be offset by a refund award for 1985. The government's motion for summary judgment as to plaintiff's 1982 liability was denied, and the court granted plaintiff's motion to allow her to assert the innocent spouse defense for the years 1981–1984. *See Memorandum and Order,* October 20, 2000 (Doc. # 32). The government has since counterclaimed for the remaining taxes due for 1981, 1983 and

1984. This action was remanded to the agency for consideration of the innocent spouse defense, resulting in a lengthy stay of the proceedings in this court. After the agency denied the defense, the action was placed back on the calendar and the trial was held.

### Discussion

The primary issue before this court is whether plaintiff Sunny Crahan is entitled to relief from the 1981–1984 tax liabilities as an "innocent spouse." A discussion of the applicable law is appropriate.

■ The government asserts the "old" statute, I.R.C. Section 6013(e), applies to plaintiff's request for refund for tax years 1981 and 1982, since the tax was fully paid before July 22, 1998, the date of enactment of the "new" statute, § 6015. Plaintiff argues the government's position is "contrary to recent decisions by the United States Tax Court and the United States Court of Federal Claims." *Post Trial Reply Brief of Sunny Crahan,* at 4. The Tax Court, in *Washington v. Commissioner of Internal Revenue,* specifically addressed the definition of tax liability "remaining unpaid," stating:

> We believe that within the context of the effective date provisions of section 6015 a tax liability "remaining unpaid" on or after July 22, 1998, means that the liability continues to be unpaid after July 22, 1998.

*Washington v. Commissioner of Internal Revenue,* 120 T.C. 137, 157, 2003 WL 1905643 (2003). The court further stated:

> We believe that, when used to describe the continuing state of a liability for tax in the provision under consideration, the word "paid" means "satisfied" and that the word "unpaid" means "not satisfied." A liability for tax "remaining unpaid as of the effective date" is a liability for tax that continues to be unsatisfied as of the

applicable date. A liability is not satisfied until it is paid in full, ergo, a liability remains unsatisfied or unpaid until it is paid in full.

*Id.* at 158. Having concluded "remaining unpaid" means not "paid in full," the *Washington* court concluded:

> Other provisions of section 6015 indicate that Congress intended the expanded relief provided by section 6015 to apply retroactively to the entire preexisting liability, rather than to the portion of a preexisting liability that had been uncollected as of the date of enactment. For example, section 6015(b) provides that if a spouse elects and qualifies for relief under that section, then the spouse "shall be relieved of *liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such understatement.*"

*Id.* (*quoting Flores v. United States,* 51 Fed.Cl. 49, 54 (2001)) (emphasis in original). Ultimately, the *Washington* court held that if a portion remains unpaid, including interest and penalty, and the spouse has valid basis for innocent spouse relief, the spouse is entitled to a refund, stating:

> That language clearly relieves the spouse of *all* liability for the taxable year attributable to the understatement; it suggests that Congress intended that the provision "should apply to the entire taxable year and the entire tax liabilities associated therewith."

*Id.* (*quoting Flores,* 51 Fed.Cl. at 55). Section 6015(b)(1)(E) lends further support that tax means interest and penalty: "liability for tax (including interest, penalties, and · other amounts) . . . ." Because a portion of plaintiff's tax liability remains unpaid for each year, specifically interest and penalties for 1981 and 1982, and the entire amounts for 1983 and 1984, this court finds that plaintiff's claim for innocent spouse

relief must be determined under I.R.C. § 6015.

Sunny Crahan asserts she is entitled to innocent spouse relief under §§ 6015(b), 6015(c), or alternatively under § 6015(f). 26 U.S.C. § 6015(b) provides:

> (b) Procedures for relief from liability applicable to all joint filers.
>
> (1) In general. Under procedures prescribed by the Secretary, if—
>
> (A) a joint return has been made for a taxable year;
>
> (B) on such return there is an understatement of tax attributable to erroneous items of one individual filing the joint return;
>
> (C) the other individual filing the joint return establishes that in signing the return he or she did not know, and had no reason to know, that there was such understatement;
>
> (D) taking into account all the facts and circumstances, it is inequitable to hold the other individual liable for the deficiency in tax for such taxable year attributable to such understatement; and
>
> (E) the other individual elects (in such form as the Secretary may prescribe) the benefits of this subsection not later than the date which is 2 years after the date the Secretary has begun collection activities with respect to the individual making the election, then the other individual shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such understatement.

26 U.S.C. § 6015(b).

There is no dispute that Frank Jones and Sunny Crahan filed joint returns for the 1981, 1982, 1983 and 1984 tax years. There is also no dispute that the understatement of tax reported on the 1981

through 1984 tax returns was a result of the Finalco Transaction and is attributable to Frank Jones. The remaining elements of the claim are disputed and will be addressed in turn.

The standard adopted by the Eighth Circuit Court of Appeals as to whether or not a spouse is entitled to innocent spouse relief was clearly stated in *Erdahl v. Commissioner:*

> The standard we adopt for innocent spouse cases asks whether "a reasonably prudent taxpayer under the circumstances of the spouse at the time of signing the return could be expected to know that the tax liability stated was erroneous or that further investigation was warranted."

*Erdahl v. Commissioner,* 930 F.2d 585, 590 (8th Cir.1991) (*quoting Stevens v. Commissioner,* 872 F.2d 1499, 1505 (11th Cir.1989)). "Mere knowledge of the transaction that was the basis of the erroneous deduction, without more, does not preclude relief . . . ." *Id.* at 589. The court further stated:

> Among the factors to be considered in determining whether the spouse had "reason to know" or a duty to inquire into the legitimacy of the claimed deduction are: "the spouse's level of education, [her] involvement in family financial affairs, the evasiveness or deceit of the culpable spouse, and any unusual or lavish expenditures inconsistent with the family's ordinary standard of living."

*Id.* at 590–91 (*quoting Guth v. Commissioner,* 897 F.2d 441, 444 (9th Cir.1990)).

█ The United States concedes that "Plaintiff appears not to have actually known about the substantial understatement on her 1981–1984 tax returns." *United States' Post–Trial Brief with Proposed Findings,* at 11. In the next breath, the United States argues that "plaintiff had reason to know." *Id.* The court disagrees. Testimony, aptly presented by plaintiff, supports a finding that Sunny Crahan had no knowledge or reason to know the Finalco Transaction would result in an understatement of tax. Sunny Crahan had nothing more than "superficial knowledge" of the Finalco Transaction. (Sunny Crahan Testimony, Trans. p. 73, lines 2–4). Sunny Crahan testified that she had no reason to believe the Finalco losses were not allowable as a deduction. (Sunny Crahan Testimony, Trans. pp. 72–73). She did not participate in the Finalco Transaction, did not know the deduction would give rise to a substantial understatement of tax, and there was no apparent departure from prior years' reporting. (Sunny Crahan Testimony, Trans. pp. 72–74). Sunny Crahan was also assured that the return had been reviewed by an accountant who had advised that the return was acceptable and appropriate. (Sunny Crahan Testimony, Trans. p. 75, lines 5–13).

Further, there is no dispute that plaintiff was not "sophisticated" in financial matters. She had no direct involvement in her late husband's financial affairs or businesses (Sunny Crahan Testimony, Trans. pp. 68–69), has no business experience (Sunny Crahan Testimony, Trans. p. 68, lines 23–24), and no education beyond high school. (Sunny Crahan Testimony, Trans. p. 65, lines 1–15). All of the family's financial affairs were handled by her deceased husband who would provide her with a "housekeeping allowance" in cash. (Sunny Crahan Testimony, Trans. p. 69, lines 3–6). Frank Jones' assumption of financial duties was so complete that when he passed away, Sunny Crahan required the assistance of her daughter, Kathleen Meyers, to help her with writing checks and developing basic financial skills. (Sunny Crahan Testimony, Trans. p. 69, lines 7–24).

In addition, Kathleen Meyers testified her parents' lifestyle did not increase dur-

ing the 1980's, and likely decreased during the 1980's. (Kathleen Meyers Testimony, Trans. pp. 44–46). Kathleen Meyers observed no lavish expenditures or purchases during the 1980's (Kathleen Meyers Testimony, Trans. pp. 44–46) and confirmed that none of the assets currently owned by Sunny Crahan were derived from the Finalco Transaction. (Sunny Crahan Testimony, Trans. p. 72, lines 9–14). Sunny Crahan received no benefit from the Finalco Transaction in excess of the normal support she was receiving during the years at issue. (Sunny Crahan Testimony, Trans. p. 77, lines 5–13). Additionally, there is no evidence that there was any significant benefit derived from the erroneous deductions. (Sunny Crahan Testimony, Trans. p. 77, lines 5–13). Although some assets still exist that were acquired during the Joneses' marriage, none of those assets are traceable to the understatement of the Joneses' 1980 through 1984 tax liabilities. (Sunny Crahan Testimony, Trans. p. 77, lines 11–19).

As to the fourth element of the claim, the court finds that it would be inequitable to hold Sunny Crahan responsible for the understatement of tax resulting from the Finalco Transaction. The government's assertion that all of plaintiff's assets can be traced back to the unpaid taxes is simply not supported by the record. *United States' Post–Trial Brief with Proposed Findings of Fact,* at 13. At the time of trial, Sunny Crahan had three significant assets: an IRA with a value of approximately $158,000, an annuity with a value of approximately $255,000, and a townhouse with net equity of approximately $50,000. (Sunny Crahan Testimony, Trans. p. 71, lines 4–14). She derives all of her support from the IRA, the annuity and social security. (Sunny Crahan Testimony, Trans. p. 77, lines 22–23, p. 79, lines 12–13). These assets were derived from the sale of the insurance business and Frank Jones' director income.

Further, the court finds that Sunny Crahan will experience significant hardship if the government collects the additional taxes, interest, and penalties that are still outstanding. (Sunny Crahan Testimony, Trans. p. 81, lines 15–19). The most current tax transcripts available at the time of trial for the years 1981 through 1984 (Plaintiff's Exhibits 1–4) indicate that the government was still attempting to collect approximately $140,000. If successful, the government would take approximately one-third of the assets Sunny Crahan currently uses for her support. While Sunny Crahan has remarried, she and her current husband, Kenneth Crahan, effectively split the cost of their living expenses. (Sunny Crahan Testimony, Trans. p. 81, lines 20–22). The couple also took steps before they were married to separate their assets through a prenuptial agreement and have likewise executed wills directing that their assets will be distributed to their respective heirs and not to each other. (Sunny Crahan Testimony, Trans. 78, lines 7–17). Kenneth Crahan's assets are not available to satisfy the tax obligation.

Finally, the withdrawal of funds from either the IRA and/or the annuity will result in a significant additional tax liability. (Sunny Crahan Testimony, Trans. p. 81, lines 1–14). That significant additional tax liability would further reduce the assets available to pay Sunny Crahan's living expenses. Therefore, the court finds that to deny plaintiff innocent spouse relief would work a substantial hardship.

■ The fifth element of the analysis relates to the timing of the plaintiff's innocent spouse election. Defendant asserts that plaintiff's innocent spouse election of 1981 was untimely as to Section 6015(c).[2]

**2.** The government has not made the same

timeliness objection to plaintiff's claim under

*United States' Post–Trial Brief with Proposed Findings of Fact*, at 9–10. The United States argues that a taxpayer must file a claim for relief within two years after the date on which the IRS begins collection activity, and "for practical purposes here," the two years began to run on the effective date of Section 6015, July 22, 1998. *Id.* The government then asserts that "[s]pecifically, the IRS began collection activity when it levied on plaintiff's stock in January 1998." *Id.* Defendant asserts that plaintiff did not file her innocent spouse election forms until September 2000, more than two years from either date. Plaintiff, on the other hand, asserts the calculation of the two year limitation period pursuant to Section 6015(b)(1)(E) "does not expire until two years after the date of the first collection activity initiated after the date of enactment, *which was July 22, 1998.*" *Post Trial Reply Brief of Sunny Crahan*, at 3 (emphasis original). Plaintiff then argues that no collection activity was undertaken after July 22, 1998 as to the 1981, 1982, and 1984 tax liabilities, and that the only collection activity for 1983 was the filing of a tax lien in January 1999,[3] making the filing of Form 8857 in September 2000 timely as to all tax years.

Regulation § 1.6015–5 addresses the time period for requesting innocent spouse relief. § 1.6015(b)(1) provides:

> To elect the application of § 1.6015–2 [parallels 26 U.S.C. § 6015(b) ] or 1.6015–3 [parallels 26 U.S.C. § 6015(c) ], or to request equitable relief under § 1.6015–4 [parallels 26 U.S.C. § 6015(f) ], a requesting spouse must file Form 8857 or other similar statement with the Internal Revenue Service no later than two years from the date of the first collection activity against the requesting spouse *after* July 22, 1998, with respect to the joint tax liability.

26 C.F.R. § 1.6015–5 (emphasis added). Example 2 in the regulation mirrors the situation we have here:

> The Internal Revenue Service offsets an overpayment against a joint liability for 1995 on January 12, 1998. The offset only partially satisfies the liability. The Internal Revenue Service takes no other collection actions. On July 24, 2001, W elects relief with respect to the unpaid portion of the 1995 liability. W's election is timely because the Internal Revenue Service has not taken any collection activity after July 22, 1998; therefore, the two-year period has not commenced.

The additional tax assessments were made against Sunny Crahan in 1991 and 1997. Although there was collection activity prior to July 22, 1998 as to the 1981 tax liability, the certified tax transcripts show no collection activity between July 22, 1998 and September 1998. Exhibit 39. Collection action on the 1983 and 1984 liability subsequent to July 22, 1998 was a federal tax lien filed January 22, 1999. Plaintiff filed Form 8857 in early September 2000, within two years of that collection activity.[4]

---

6015(b), but the court chooses to address the timeliness issue to fully resolve the matter.

3. The court notes from the tax transcripts that a tax lien appears on the 1984 transcript in January 1999 also.

4. Revenue Procedure 2000–15, 2000 WL 42026 provides that Form 8857 is not the only way to assert an innocent-spouse defense. Section 5 provides, in relevant part, that a requesting spouse may file Form 8857 "or other similar statements signed under penalties of perjury within two years of the first collection activity against the requesting spouse." Sunny Crahan timely made an innocent spouse election through the submission of amended tax returns in April 1998 with the filing of Form 1040X for the years 1981 and 1982.

Therefore, plaintiff's election was timely filed.

Based on the foregoing discussion, the court finds that plaintiff Sunny Crahan is accorded innocent spouse status pursuant to 26 U.S.C. § 6015(b). Plaintiff is therefore relieved of any liability for the 1981–1984 taxes arising from the Finalco Transaction.

The court finds no evidence of "spoliation of evidence" as asserted by the government. Plaintiff had limited control, if any, of the financial records and any inability to produce them would be the result of the actions of Frank Jones.

 The government asserted a claim for relief based upon "transferee liability" at the time of the final pretrial conference. The court finds that any claim for transferee liability is barred by the statute of limitations contained within Section 6901 of the Internal Revenue Code. Section 6901(c)(1) provides a statute of limitations for assessment of a liability against a transferee as one year after expiration of the period of limitations for assessment against the transferor. As all of the taxes in this case were assessed in either 1991 or 1997, the court concludes that the one-year statute of limitations necessarily expired. Further, regardless of the statute of limitations preclusion of the claim, there is ample evidence in the record to support the finding that the transfers of property by Frank Jones to his wife were not done in a fraudulent manner or for an improper purpose. Therefore, defendant's claim of transferee liability must fail.

 Plaintiff seeks a refund of all amounts paid in years 1981–1984. Section 6015(g) governs the allowance of credits and refunds in cases where a taxpayer is granted relief under section 6015. This section provides:

§ 6015(g). Credits and Refunds.

(1) In general. Except as provided in paragraphs (2) and (3), notwithstanding any other law or rule of law (other than section 6511, 6512(b), and 7121, or 7122), credit or refund shall be allowed or made to the extent attributable to the application of this section.

The government argues that no payments have been made to the 1983 and 1984 tax liability, nor has there been a claim for refund pursuant to section 6511. Therefore, the government contends plaintiff's request for refund for tax years 1983 and 1984 must be denied. The court agrees, but presumes, as would be evident from the record, that plaintiff is only seeking a refund of the amounts paid, $79,824.41 (plus any payments subsequent to the transcripts dated 5/9/02), which relate to tax years 1981 and 1982. The government apparently does not dispute that *if* the plaintiff is entitled to innocent spouse relief pursuant to § 6015(b), as this court has so found, plaintiff is entitled to a refund of the amount paid, pursuant to § 6015(g). Therefore, the court concludes Sunny Crahan is entitled to a refund of the amounts paid toward the 1981 and 1982 assessments.

**IT IS ORDERED** that judgment be entered in favor of plaintiff, Sunny Crahan. Plaintiff is directed to prepare and submit a proposed form of judgment in accordance with this order.